[No. 9386.  *En Banc.*  March 3, 1911.]

# F. J. WALKER, *Appellant*, v. THE CITY OF SPOKANE *et al.*, Respondents.[1]

MUNICIPAL CORPORATIONS—CHARTERS—STATUTES—CONFLICT. Charters adopted by cities of the first class are subject to and controlled by general laws, and this is the only constitutional restriction therein.

STATUTES—REPEAL—MUNICIPAL CORPORATIONS—LEGISLATIVE POWERS—CHARTERS—CONSTRUCTION.  Rem. & Bal. Code, § 7504, authorizing electors of cities of the first class to frame and adopt a city charter, does not repeal Rem. & Bal. Code, § 7517, providing that the legislative powers of such city shall be vested in a mayor and city council, although it modifies and grants larger and more extensive legislative powers than those granted by § 7517.

MUNICIPAL CORPORATIONS—CHARTERS—GOVERNMENTAL POWERS — COMMISSION FORM OF GOVERNMENT—STATUTES—CONSTRUCTION.  Under Rem. & Bal. Code, § 7517, providing that the legislative powers of a city of the first class shall be vested in a mayor and city council with such duties as may be prescribed in its charter, and Id., § 7518, providing that such city adopting a charter shall have all the powers now or hereafter conferred upon cities and towns by the laws of the state, and such as are usually exercised by municipal corporations, and Id., § 7504, providing that the voters may amend the charter in any matter within the realm of local affairs or municipal business, a city may adopt the commission form of government vesting all legislative and executive power in five commissioners who shall constitute the council, one of whom shall be mayor, each to be in charge of an independent department; since the same does not go beyond the realms of local affairs and municipal business.

STATUTES—CONSTRUCTION—EQUITABLE CONSTRUCTION.  Equitable construction of statutes, while tolerated in remedial statutes with great caution, should not be extended to regulations of public policy, and if the language is plain and free from ambiguity, inconvenience in its enforcement can have no weight in its construction.

MUNICIPAL CORPORATIONS—OFFICERS—MAYOR—POWERS—STATUTES.  Rem. & Bal. Code, § 7517, providing that the legislative powers of cities of the first class shall be vested in a mayor and city council, without limiting or specifying his duties as an executive officer, does not imply that the mayor must be an officer possessed of the distinguishing characteristics of a mayor, or that he shall be an

[1]Reported in 113 Pac. 775.

executive officer, since other mandatory provisions of the statutes are to the effect that he shall perform the duties prescribed by the charter.

CONSTITUTIONAL LAW—GUARANTIES—REPUBLICAN FORM OF GOVERNMENT—MUNICIPAL CORPORATIONS—CHARTERS. A city charter establishing the commission form of government, with the initiative, referendum, and recall does not abolish the republican form of government guaranteed by art. 4, § 4, of the Federal constitution; since the guarantee applies only to the state governments, and means only a representative form of government subject to the will of the people.

MUNICIPAL CORPORATIONS—CHARTERS—COMMISSION FORM OF GOVERNMENT—INITIATIVE AND REFERENDUM. The only limitation on the powers of a city government to enact laws through the medium of a charter is that they shall be in accordance with general laws, and a charter establishing the commission form of government, with the initiative, referendum, and recall does not violate any statutory law.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered February 3, 1911, upon the pleadings by stipulation of counsel, after sustaining a demurrer to the complaint, dismissing an action to enjoin the holding of an election to elect municipal commissioners. Affirmed.

*Turner & Geraghty*, for appellant.

*Fred B. Morrill, Burcham & Blair*, and *H. M. Stephens*, for respondents.

DUNBAR, C. J.—The only question in this case arises on the complaint, the defendant having filed a demurrer to the complaint as well as an answer, and the parties having stipulated in open court that the answer be not taken as waiving the demurrer, and that the court might render judgment on the pleadings as they stood. Plaintiff consented to this method of disposition because the answer failed to deny any material allegation of the complaint. The demurrer to the complaint was sustained, and from the judgment following, this appeal is taken.

The complaint, in brief, is to the effect that an election was

held on the 27th day of September, 1910, by the qualified electors of the city of Spokane, at which were chosen fifteen freeholders to prepare a new charter, and that on the 11th day of November, 1910, said body of freeholders filed with the clerk of said city the so-called new charter. The charter is set forth in the complaint and made a part of the same. It is alleged that the so-called charter undertakes to, and does in substance and in fact, abolish the office of mayor of the city of Spokane and the council of the city of Spokane, and undertakes to substitute in place of said mayor and council five commissioners in whom is reposed all municipal power, both legislative and executive; also abolishes the provisions of the city charter in force, providing for the election by the qualified electors of the city of the mayor and council, and also undertakes to abolish and do away with the provisions of the charter then and theretofore in effect, dividing the municipal power of the city between legislative and executive departments, each independent of the other; all of which it is alleged is contrary to the laws of the state of Washington. Many other allegations are made in the complaint, but these are sufficient to raise the questions discussed. The prayer was for a restraining order, to prevent the calling, advertising, and holding of an election for the election of the commissioners provided for in the charter, and to prevent the abdication of the officers now in power.

The charter provides that all the power in the city, unless otherwise provided by the charter, shall be exercised by, through, and under the direction of five commissioners, who shall constitute the council and one of whom shall be mayor; and that the commissioners and council shall be subject to the order and direction of the people at all times by the initiative, referendum, and recall, provided for in the charter. It provides that each commissioner shall be entitled to a vote; that the mayor shall not have any veto power; and that the executive and administrative powers, authority, and duties, not otherwise provided therein, shall be distributed among five

departments, as follows; department of public affairs, department of finance, department of public safety, department of public works, and department of public utilities; that such distribution among the various departments shall be made and may be changed by ordinance; that the council shall prescribe the powers of the officers and employees, etc. These provisions, we think, are sufficient to present the case.

The main contention of the appellant, as we understand it, is that § 6 of the act of 1889-90, page 223, which is § 7517 of Rem. & Bal. Code, and which act provided for the government of cities of the first class, provided for a system of government which contemplated an executive and a legislative department, the mayor to be invested with certain executive powers separate and distinct from the powers conferred upon the council; and that the charter under discussion violates this provision of the law by merging the executive and the legislative powers of the city officers, thereby stripping the executive head—the mayor—of any distinct, executive powers. It may be conceded from the outset that, while cities of the first class have the constitutional right to frame their own charters, the charters so framed are subject to, and controlled by, general laws. Const., art 11, § 10. And this is all the constitutional limitation that there is. So that it becomes our duty to see if any of the provisions of the charter are in contravention of any legislative enactment. That portion of § 6 of the act of 1889-90 (Rem. & Bal. Code, § 7517), pertinent to this inquiry, is as follows:

"The legislative powers of any city, organized under the provisions of this act, shall be vested in a mayor and a city council, to consist of such number of members, and to have such powers, as may be provided for in its charter, who, together with such other elective officers as may be provided for in such charter, shall be elected at the times, in such manner, and for such terms, and shall perform such duties and receive such compensation, as may be prescribed in such charter."

Section 7 of the same act (Rem. & Bal. Code, § 7518), is as follows:

"Any city adopting a charter under the provisions of this act shall have all the powers which are now or may hereafter be conferred upon incorporated towns and cities by the laws of this state, and all such powers as are usually exercised by municipal corporations of like character and degree, whether the same shall be specifically enumerated in this act or not."

Section 1 of chapter 186 of the Laws of 1903, page 393 (Rem. & Bal. Code, § 7504), an act providing for direct amendments of city charters, is as follows:

"On petition of a number (equal to fifteen per cent of the total number of votes cast at the last preceding municipal election) of qualified voters of any municipality having adopted a charter under the laws of this state, asking the adoption of a specified charter amendment, providing for any matter within the realm of local affairs, or municipal business, the said amendment shall be submitted to the voters at the next regular municipal election, occurring thirty days or more after said petition is filed, and if approved by a majority of the local electors of the municipality voting upon it, such amendment shall become a part of the charter organic law governing such municipality."

It is contended by the respondents that this section repeals § 7517 of Rem. & Bal. Code, and that it has been so decided by this court in *Hindman v. Boyd*, 42 Wash. 17, 84 Pac. 609, and in *Hartig v. Seattle*, 53 Wash. 432, 102 Pac. 408. It is insisted by the learned counsel for appellant that the language used in the latter case, to the effect that *Hindman v. Boyd* held that the act of 1903 repealed by implication § 7517, *supra*, was too broad, and upon further examination and reflection we are compelled to admit the justice of the criticism. But notwithstanding this, it is obvious that the *rationale* of the decision in *Hindman v. Boyd* was to hold § 7517 repealed to the extent of granting larger and more extensive powers to the city government, and that the limitation in the former law, to the effect that the legislative powers should be vested in

a mayor and a city council, had been modified. Speaking to this question the court said:

"It is practically conceded by appellants that, if the statute, § 740 [7517] *supra*, were not in existence, it would lie with the people to discharge legislative functions. It is contended, however, that the statute is in full force, and that it is prohibitive of legislation in any manner except by the mayor and council. It is argued that the act of 1903 in no way affects the provisions of said § 740. It is true the act does not refer to the former statute, but if it reaches the same subject it should be held to affect the older statute in so far as it treats of the same subject. The later act provides that charters may be amended in the manner outlined, 'providing for any matter within the realm of local affairs or municipal business.' The terms could not be broader and, if the former statute can be said to have vested the power to legislate with respect to franchises exclusively in the mayor and council, the later one authorizes the people to reserve that power to themselves, since they may amend the charter providing for any matter 'within the realm of local affairs.'"

Under this decision and the broad powers conferred by the statute which was held to apply, it cannot be contended that the charter provisions complained of in this case go beyond the realms of local affairs or municipal business. It is, however, contended by the appellant that the phraseology employed should, in the interest of moderation, receive judicial construction; that it is the duty of courts to construe legislative acts so as to effectuate legislative intention; to confine broad language, going beyond legislative intention, within narrow limits; and to extend language, not coming fully up to the legislative intention, to a broader application, in order that the will of the law-making power may be effectuated. Undoubtedly it is true that the central idea should be to effectuate the legislative intention. But to discover that intention is a difficult proposition. It seems to us that the canons of construction recommended by the learned counsel are so flexible, and the powers conferred upon the court so

unhampered, that there would be great danger that the intent of the legislature would too frequently be found to be simply a reflection of the views of the court on the question of the public policy involved in the act construed, which would in reality be a usurpation of the legislative functions. Some authorities and courts, especially the English courts, have recognized what they are pleased to term an equitable construction; but it is the consensus of judicial opinion that, while equitable construction may be tolerated in remedial statutes, it should always be resorted to with great caution, and never extended to mere arbitrary regulations of matters of public policy. When the language of the act is plain, free from ambiguity, and devoid of uncertainty, it is unanimously held that there is no room for construction, and that inconvenience following the enforcement of the law as expressed can have no weight in the construction of the statute.

Sedgwick on Constr. Stats. & Const. Law (2d ed.), p. 265, in discussing this question, says:

"Of those rules of construction, none can be more dangerous than that which, distinguishing between the intent and the words of the legislature, declares, that a case not within the meaning of a statute according to the opinion of the judges, shall not be embraced within the operation of statute, although it is clearly within the words; or, *vice versa*, that a case within the meaning, though not within the words, shall be embraced. We should invariably deem it our duty to defer to the expression of the legislature, to the letter of the statute, when free from ambiguity and doubt, without indulging in speculations, either upon the impropriety or hardship of laws."

But we think the position of the appellant is untenable, even under the provisions of § 7517. There is nothing in that section which undertakes to specify or limit the duties of a mayor as an executive officer. In fact, he is not even described as an executive officer, but as a legislative officer; and the objection to the proposed charter is that it in reality makes nothing of him but a legislative officer. It is contended

by the learned counsel for appellant that, while the section does not specifically provide that the executive power shall reside in a mayor, it is necessarily implied by the mention of that official; that if no function other than acting in conjunction with the city council in matters of legislation was intended to be performed by the mayor, no mention of such official would have been made, and the mandate of the law would have been simply that the legislative power of the city should be vested in a city council. Hence, it is necessarily implied that cities of the first class are each to have a mayor possessing the distinguishing characteristics of that office. But there is no room for an implication when the plain, mandatory provisions of the statute are to the contrary. And as we have seen, § 7517 provides that the mayor and council shall have such powers as may be provided for in its charter, and that they shall perform such duties and receive such compensation as may be prescribed in such charter.

It is further contended that the matter does not rest on implication alone, because § 7 of the act of 1889-90 (Rem. & Bal. Code, § 7518), above quoted, confers on cities of the first class powers which are now, or may hereafter be, conferred upon incorporated towns and cities by the laws of this state; and as to towns and cities of the second and third classes, it is found that each of them is provided with a mayor, and the powers of that functionary are clearly defined. It seems to us that, instead of this proving the theory contended for by the appellant, it tends to strengthen the opposite theory, viz., that larger powers were intended to be conferred upon cities of the first class than upon cities of the second class, and that cities of the first class are, therefore, not subject to the limitations imposed by the law quoted, upon towns and cities of the second and third classes.

It does not necessarily follow, from the fact that the statute provides that the legislative powers of the cities of the first class shall be vested in a mayor and city council, that the

mayor is, within the contemplation of the law, an executive officer. Nor do the cases cited by counsel for appellant sustain that view. In *Cochran v. McCleary*, 22 Iowa 75, which was a case embracing the right of the mayor to preside over the city council, Judge Dillon said:

"In this country the doctrine has been recognized that corporations, public or private, could be created only by act of the legislature, and they and their officers had and could exercise only the powers granted to them either expressly or by implication."

Inasmuch as our statute sees fit to relegate to the charter the enumerating and conferring of the powers upon the mayor and the councilmen, it would seem, under the theories of the case cited, that there is where the power would rest. In *Waldo v. Wallace*, 12 Ind. 569, it was held that the mayor of a city, organized under the general laws of 1857, was a judicial officer within the meaning of that constitutional provision, if, at the time of his election, no order had been made by the city council for the election of a city judge and no such judge had been elected, and that the statute conferring judicial powers upon the mayor of a city was not unconstitutional; and that was the real question in the case. In the discussion of the case, however, it was said that the powers and duties of a mayor or other head officers of a corporation depend, in general, upon the provisions of charters, or prescriptive usage of the corporation, or express provisions of an act of parliament; but that the power and authority which mayors possess, being given to them by local regulations, vary in different places. So that it repudiates the idea that a mayor has, by virtue of his position as mayor, any executive or other authority which is not conferred upon him by the legislature or by the charter under legislative direction. Bouvier, in describing a mayor, says:

"It is generally his duty to cause the laws of the city to be enforced, and to superintend inferior officers, such as constables, watchmen, and the like. But the power and au-

thority which mayors possess, being given to them by local regulations, vary in different places."

Anderson's definition is:

"The chief or executive magistrate of a city. His principal duty is to enforce the laws of the city. He may also preside over the mayor's court, which has jurisdiction, concurring with the courts of other committing magistrates, over offenses perpetrated within the city limits, and of special matters given by statute."

So that it will be seen that his duties may be legislative, executive, or judicial, according to the law in force in his jurisdiction. The state law nowhere confers upon the mayor the right of veto. He does not possess it unless it is conferred by charter.

Something has been said to the effect that this charter cannot be sustained under the republican form of government guaranteed to the states by the Federal constitution. Section 4, art. 4, of that document provides:

"The United States shall guarantee to every state in this Union a republican form of government, and shall protect each of them against invasion; . . ."

In addition to the fact that this guaranty applies only to a state government, it means only such a government as is under the control of the people; or, in other words, a representative government. At the time of that enactment, there was no thought of an encroachment on the part of the people, and consequently no attempt to guard against it. The apprehension was exactly the reverse. It was on encroachment upon the rights of the people which the fathers sought to prevent; and it would be impossible to violate the spirit of that provision by enlarging the representative powers of the people. The distinction between a democratic form of government and a republican form of government, in the sense in which the term is used in the Federal constitution, is more theoretical than real, for the vital idea in both is a

government by the people; and whether the will of the people be expressed through a representative or through a personal announcement, it is but a difference in form of expression. The action of the representative must proceed upon the theory that he is expressing the will of the constituency; otherwise the theory of a republican form of government is a delusion. That the power never has been supposed to apply to minor departments of the state is shown by the form of county governments which have been provided for by so many of the states. The board of county commissioners, clothed with the authority with which they are clothed, especially in our state, is a common form of government by commission, which is universally sustained.

Sustaining the view which we have expressed with relation to the object of the constitutional guaranty, it is said by Mr. Cooley, in his work on Constitutional Limitations, page 42:

"The last provisions that we shall here notice are that the United States shall guarantee to every state a republican form of government, and that no state shall grant any title of nobility. The purpose of these is to protect a Union founded on republican principles, and composed entirely of republican members, against aristocratic and monarchical innovations."

Nor are we without the authority of cases to sustain this view. In *Eckerson v. Des Moines*, 137 Iowa 452, 115 N. W. 177, where the question of republican form of government was involved, under an act of the general assembly providing for the government of certain municipalities where the initiative and referendum was brought in question, the act was sustained; and it was held that the contention, that the constitutional guaranty which we have just mentioned ran, not alone to the state, but to the various subdivisions thereof, was not tenable; but that the purpose of the Federal constitution was to provide a form of government, republican

in character, for the states as a united whole.    Said the court:

"This is manifest from the history of the times, the contemporaneous writings and public addresses, the constitutional debates, and the provisions of the instrument itself as adopted.    And whatever may be the form of words employed by the lexicographers—and they are more or less varied—to define what is meant by the expression 'a republican form of government,' it is clear that it was understood by the fathers to mean a government by the people, through representatives appointed by them to the various departments—executive, legislative, and judicial, as provided—either by direct vote or through some intervening officer or body by them selected and appointed by direct vote for the purpose. Now, at the time the constitution was adopted, as it is well known, there were in existence thirteen states, each thereof supreme as related to its own domestic affairs, and in each of which the government was divided into three departments —executive, legislative, and judicial—and carried on through representatives selected from time to time by vote of the people.    It is to be noted, however, that the form of local government provided for municipalities and other state subdivisions varied in the different states.    In some, pure democracy obtained through the medium of the 'town meeting;' in others, boards of selectmen were chosen, etc.    That the form of government in vogue in these states was republican was not made the subject of question when the Federal constitution came to be considered.    No one of such states was called upon to amend its plan of government—state or municipal—to bring it into harmony with the plan proposed for the Federal government."

And this was the view expressed by this court in *Hartig v. Seattle, supra*, where it was said, in discussing the validity of the charter of Seattle concerning the power to provide for the initiative and referendum:

"It can scarcely be contended that this plan is inconsistent with a republican form of government, the central idea of which is a government by the people.    Whether the expression of the will of the people be made directly by their own acts, or through representatives chosen by them is not material.    The important consideration is a full expression."

This doctrine is based upon the distinction between the constitution of the United States and the constitutions of the different states.  The constitution of the United States is a grant of power; that is to say, Congress was granted such powers only as were expressed in the grant.  The remaining powers rested in the people.  And when looking for the powers of Congress, we search for powers delegated. While the constitution of the state is simply a limitation upon the powers of the legislature, and all power which is not limited by the constitution inheres in the legislature as a representative body, and primarily in the people.  Hence, as applied to this particular case, the only limitation on the part of the powers of the city government to enact laws through the medium of a charter is that they shall be in accordance with general laws; and the legislature, as we have seen, being the depositary of authority under the constitution, we can look for restrictions upon the rights of the people only to the general laws.

In *Brown v. Galveston*, 97 Tex. 1, 75 S. W. 488, it was held that the charter of the city of Galveston, in conferring upon the president and board of commissioners, a majority appointed by the governor, the power of governing the city, usually committed to a mayor and city council, was not void as violating article 6, section 3, of the constitution, giving all qualified electors the right to vote for a mayor and all other elective officials.  Nor was it beyond the power of the legislature to enact, as being in derogation of an inherent right of local self-government by municipalities, arising by implication from history and tradition in that state.  In discussing the principles involved, it was said:

" 'The legislative power of this state' means all of the power of the people which may properly be exercised in the formation of laws against which there is no inhibition expressed or implied in the fundamental law. '  Since a municipal corporation cannot exist except by legislative authority, can have no officer which is not provided by its charter, and can exercise no power which is not granted by the legislature, it

follows that the creation of such corporations and every provision with regard to their organization is the exercise of legislative power which inheres in the whole people, but by the constitution is delegated to the legislature; therefore, it is within the power of the legislature to determine what form of government would be most beneficial to the public and to the people of a particular community;"

citing, Cooley, Const. Lim., 205, where that author says:

"Nor are the courts at liberty to declare an act void because, in their opinion, it is opposed to a spirit supposed to pervade the constitution, but not expressed in words."

It was also held in *Greenville v. Pridmore,* 86 S. C. 442, 68 S. E. 636, that the constitutional requirement with respect to the separation of the three departments of the government refers to the state government and state officers, and not to the government of municipal corporations and their officers. In *Spartanburg v. Parris,* 85 S. C. 227, 67 S. E. 246, it was held that the constitutional provision that no person exercising the functions of one department of the government shall assume or discharge the duties of another does not apply to municipal corporations. To the same effect are: *Graham v. Roberts,* 200 Mass. 152, 85 N. E. 1009, and *Baltimore & O. R. Co. v. Town of Whiting,* 161 Ind. 228, 68 N. E. 266. There being no violation of statutory law in the proposed charter, the demurrer was properly sustained. Judgment affirmed.

ALL CONCUR.