[No. 28246. *En Banc.* December 11, 1940.]

WARREN E. AYERS, *Respondent,* v. THE CITY OF TACOMA *et al., Appellants.*[1]

[1]Reported in 108 P. (2d) 348.

546

*Howard Carothers, Clarence M. Boyle,* and *George F. Abel,* for appellants.

*Bartlett Rummel,* for respondent.

JEFFERS, J.—This action was brought under the declaratory judgment act (Rem. Rev. Stat. (Sup.), § 784-1 [P. C. § 8108-21] *et seq.*, Laws of 1935, chapter 113, p. 305, as amended by Laws of 1937, chapter 14, p. 39), by Warren E. Ayers, an employee of defendant city of Tacoma, eligible to become a member of the city's pension system. The action was brought by plaintiff in his own behalf, and as a representative of eight hundred seventy-two other employees simi- larly situated, to determine the validity and constitu- tionality of a pension ordinance of the city. Thomas A. Swayze, as controller, C. Val Fawcett, as treasurer of the city, and Smith Troy, as attorney general of the state of Washington, were joined as parties de- fendant.

The complaint alleges that the city of Tacoma is a city of the first class, located in a county of the first class; that Thomas A. Swayze is the duly elected, qualified, and acting controller of the city; and that C. Val Fawcett is the duly elected, qualified, and act- ing commissioner of finance of such city, and as such is city treasurer.

The complaint further alleges that plaintiff is a duly appointed employee of the city, with a civil service classification and appointment as meterman in the de- partment of public utilities, light division, and has been continuously in the employ of the city for more than thirty years; that on March 11, 1930, there was

duly adopted, by referendum of the electors of the city, an amendment to the charter, known as § 146, which is as follows:

"The city council may by ordinance establish a pension system for the retirement of superannuated or permanently disabled non-elective officers and employes of the city and for the making of compensation thereof in cases of partial or temporary disability. Any system established thereunder shall be financed jointly by the city and the officers affected thereunder. Prior to the establishment thereof the council shall for its guidance, secure from a competent actuary a report of the cost of establishing the same. The provision hereof shall not be applicable to officers or employes pensioned pursuant to state law;"

that, on or about August 21, 1940, the city duly passed ordinance No. 11870, establishing such a system, which, under the terms of the ordinance, was to become operative January 1, 1941; that, on or about October 4, 1940, Thomas A. Swayze, as controller of the city, notified plaintiff that he would refuse at all times in the future to perform the functions required of him under such ordinance, and particularly would refuse to draw any warrants for the payment of any benefits thereunder, upon the ground that he had been advised by the corporation counsel of the city that there was doubt as to the validity and constitutionality of the ordinance; that the controller has so refused, and will in the future refuse, to carry out the purposes of the ordinance and the acts required of him thereunder; that it is the contention of the controller that the city lacks the power to pass such an ordinance, and that the ordinance is in conflict with chapter 207, Laws of 1939, p. 773 (Rem. Rev. Stat. (Sup.), § 9592-101 [P. C. § 707-51] et seq.), and therefore such ordinance is invalid and unconstitutional; that an actual controversy has arisen between plaintiff and defend-

ant controller, relating to their respective legal rights and duties; that unless there is an adjudication of the rights of plaintiff under the ordinance, plaintiff will be damaged, and the pension and retirement system as therein created will be ineffective by reason of the refusal of the controller to act as required in the ordinance.

The defendants, with the exception of the attorney general, appeared and demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. As to the attorney general, it was stipulated that he could appear at the hearing on the demurrer if he so desired, and could appear further in any appeal to this court if he so desired.

The matter came on for hearing on the demurrer on October 16, 1940, and after argument of counsel the court overruled the demurrer, and thereafter and on the same day, it appearing that defendants in open court refused to plead further, and having elected to stand on their demurrer, the court entered judgment in favor of plaintiff, wherein the court decided that ordinance No. 11870 is a valid ordinance and does not violate the constitution of the state of Washington; that it is within the power of the city to adopt the ordinance; that the same is not in conflict with chapter 207, Laws of 1939; and that it is the duty of the controller and the city treasurer to perform the functions required of them under the ordinance.

Defendants, with the exception of the attorney general, who did not join in the appeal, have appealed from the judgment entered.

Appellants' assignments of error are based upon the overruling of their demurrer and the entry of judgment in favor of respondent.

We believe this a proper case to be brought under

the declaratory judgment act. No contention was made that the act did not apply.

There are two questions presented on this appeal: (1) Does the ordinance violate § 7, Art. VIII, of the state constitution? (2) Is the ordinance invalid because in conflict with chapter 207, Laws of 1939?

■ We shall first discuss the question of whether or not the ordinance violates § 7, Art. VIII, of the state constitution, which provides:

"No county, city, town, or other municipal corporation shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association, company, or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company, or corporation."

It is the contention of appellants that, inasmuch as immediate benefits are granted to certain employees who have not contributed and will not contribute to the pension fund, and who will not perform services after the effective date of the ordinance, the payment of any pension to them constitutes a pure gratuity, which is prohibited by § 7, Art. VIII, *supra*.

The question raised by appellants has been thoroughly discussed by the courts of Michigan, in *Bowler v. Nagel*, 228 Mich. 434, 200 N. W. 258, 37 A. L. R. 1154; Illinois, in *People ex rel. Kroner v. Abbott*, 274 Ill. 380, 113 N. E. 696, Ann. Cas. 1918D, 450; California, in *Richards v. Wheeler*, 10 Cal. App. (2d) 108, 51 P. (2d) 436; Texas, in *Byrd v. Dallas*, 118 Tex. 28, 6 S. W. (2d) 738; and other states (see note 37 A. L. R. 1162). This problem is the same whether it is raised on the construction of a state statute or a city ordinance, provided there is the same constitutional limitation upon authority. The reasons advanced by those courts which hold that legislation such as is here under consideration does not

violate constitutional provisions such as § 7, Art. VIII, appear from the opinion in *Bowler v. Nagel, supra*:

"The moneys to be paid to retiring employees under the amendment are not gratuities. They are annuities, commonly called pensions, and in the nature of compensation for services theretofore rendered. Provisions for such payments to certain Federal officials and officers, soldiers and sailors, and the power of congress to provide therefor, although not expressly conferred by the Federal Constitution, has been upheld. *United States v. Hall*, 98 U. S. 343. As before stated, such payments are provided for in laws like that before us in the belief on the part of those favoring their enactment that the city is benefited thereby, that more efficient service is rendered, and that the long continuous service necessary to bring the employees within its provisions justifies its payment as an economic proposition."

In the cited case, directly answering a contention that the ordinance contravenes § 25, Art. VIII, of the constitution of Michigan, which reads in part:

" 'No city or village shall have power . . . to loan its credit, nor to assess, levy or collect any tax or assessment for other than a public purpose,' "

the court stated:

"That the money which will be expended under this amendment is for 'a public purpose' we have no doubt. The annuities, or pensions if you please, to be paid under it are not gratuities but in the nature of additional compensation for valuable services rendered to the city."

The view expressed by the Michigan court in the *Bowler* case is the view held by the great majority of courts, and we are in accord therewith. In our opinion, it therefore follows that ordinance No. 11870 does not violate § 7, Art. VIII, of our state constitution. It may be stated in passing that a contrary view is held by some courts, typical of such cases being *State ex rel.*

*Heaven v. Ziegenhein*, 144 Mo. 283, 45 S. W. 1099, 66 Am. St. 420.

■ Passing to the next question, which involves the intention of the legislature in enacting chapter 207, Laws of 1939, and specifically whether or not it was the intention of the legislature to preempt the pension field, in so far as first-class cities in first-class counties are concerned, thereby revoking the right of any such city to adopt by ordinance a pension system different from that set up in the state act, we think it might be well to first discuss the power of first-class cities, regardless of state law, to adopt a pension system.

Section 10, Art. XI, of the state constitution, from which cities of the first class derive their basic powers, provides in part:

"Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population of cities and towns, which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith; and cities or towns heretofore or hereafter organized and all charters thereof framed or adopted by authority of this constitution shall be subject to and controlled by general laws. Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state  .  .  ."

Rem. Rev. Stat., § 8948 [P. C. § 697], provides:

"The form of the organization and the manner and mode in which cities of the first class shall exercise the powers, functions and duties which are or may be given by law to such cities, with respect to their own government shall be as provided in the charters thereof."

Section 8951 [P. C. § 674], provides:

"Any city now having, or which may hereafter have, a population of twenty thousand or more inhabitants may frame a charter for its own government."

Section 8966 [P. C. § 678], enumerates certain powers given to cities of the first class.

Section 8981 [P. C. § 680], "Additional Powers," provides:

"Any city adopting a charter under the provisions of this act shall have all the powers which are now or may hereafter be conferred upon incorporated towns and cities by the laws of this state, and all such powers as are usually exercised by municipal corporations of like character and degree, whether the same shall be specifically enumerated in this act or not."

Section 8982 [P. C. § 681], provides:

"The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this act, but the same shall be liberally construed for the purpose of carrying out the objects for which this act is intended."

The foregoing statutes are discussed in *State ex rel. Ennis v. Superior Court,* 153 Wash. 139, 279 Pac. 601, and the rule to be followed in determining powers conferred upon cities of the first class is set out in the following language:

"It is evident from the constitution of this state and legislative enactments that, in Washington, cities of the first class are vested with very extensive powers, and that, under Rem. Comp. Stat., § 8982, *supra,* the statutes of this state concerning the same must be liberally construed by the courts for the purpose of carrying out the manifest intent of the legislature to establish cities of the first class as self-governing bodies, only 'subject to and controlled by general laws.' (*Walker v. Spokane* [62 Wash. 312, 113 Pac. 775], *supra.*)"

The opinion continues by stating that the rule announced in Dillon on Municipal Corporations, § 89, to

the effect that " 'any fair or reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied,' " should not be followed in determining a question involving the power of a city of the first class under its charter, as subject to and controlled by general laws.

In *Walker v. Spokane,* 62 Wash. 312, 113 Pac. 775, Ann. Cas. 1912C, 944, we stated:

"It may be conceded from the outset that, while cities of the first class have the constitutional right to frame their own charters, the charters so framed are subject to, and controlled by, general laws. Const., art 11, § 10. *And this is all the constitutional limitation that there is.*" (Italics ours.)

Undoubtedly, in the absence of legislative expression to the contrary, cities of the first class, under pertinent charter provisions, have power to establish by ordinance lawful pension systems for their employees. It is essentially a governmental function directed toward more effective public service, which is to the benefit of the city. While we admit the express power to establish pension systems is not granted to first-class cities, we are satisfied such power is necessarily implied from the broad powers expressly conferred on cities of the first class by § 10, Art. XI, of the state constitution, and the statutory provisions hereinbefore referred to.

It may be stated as a general rule that a state law will not be construed as impliedly taking away from a first-class city an existing power. In order to accomplish that result, the state statute must be clear and unambiguous. A seeming conflict must be harmonized, if possible. *McGill v. Hedges,* 62 Wash. 274, 113 Pac. 635. See, also, 43 C. J. 199.

With these principles in mind, let us look at chapter 207, *supra,* and see whether or not it appears from the

act, in clear and unambiguous language, that the legislature intended to make the act mandatory and not permissive, in so far as first-class cities in first-class counties are concerned.

■ The title of chapter 207, Laws of 1939, is expressed as follows:

"An Act *enabling* the creation and establishment of retiring and pension systems for superannuated and disabled officers and employees of cities of the first class; providing for the payment of retirement allowances; prescribing the conditions on which said allowances shall be paid; fixing rates of contribution and providing for the adjustment thereof; and providing for the administration of said systems." (Italics ours.)

Section 1, of chapter 207, p. 773, provides:

"Any city attaining the status of a first-class city after July 1, 1939, is empowered by this act to establish retirement and pension systems for superannuated or totally and permanently disabled officers and employees of cities of the first class." Rem. Rev. Stat. (Sup.), § 9592-101 [P. C. § 707-51].

Section 2, p. 774, Rem. Rev. Stat. (Sup.), § 9592-102 [P. C. § 707-52], defines certain words and terms used in the act.

Section 3, p. 776, which is one of the sections upon which appellants base their contention that it was the intention of the legislature to exclusively occupy the field, in so far as first-class cities in first-class counties are concerned, provides:

"A retirement system is hereby created and established in each city of the first class in each first-class county to be known as the 'employee's retirement system.' This act shall become effective as to any such city when by ordinance of the city duly enacted its terms are expressly accepted and made applicable thereto. This section shall not be construed as preventing performance before July 1, 1939, of any preliminary work which any City Council, City Commission

or Board of Administration shall deem necessary."
Rem. Rev. Stat. (Sup.), § 9592-103 [P. C. § 707-53].

While we grant that § 3, *supra,* might be interpreted
as requiring first-class cities in first-class counties, if
they adopt any pension system, to adopt the system
provided for by chapter 207, we are of the opinion
such interpretation is not demanded by the language
used.  The second sentence of this section makes the
act applicable only if and when any such city, by
ordinance, expressly accepts and adopts the act.  Con-
struing § 3 in its entirety, we are of the opinion the
implication is that any city which fails to adopt the
particular system provided for in the act, is not barred
by the act from adopting such system as it chooses.
It certainly nowhere expressly appears in chapter
207 that the system therein provided for shall be the
exclusive and only system that may be adopted in
first-class cities in first-class counties.

Recognizing, as we have, that this is a field which
may be occupied by a first-class city, under its charter
provisions, when not in conflict with state law, we are
of the opinion it does not sufficiently appear from this
act that it was the intention of the state to preempt this
field of legislation.  There are certain ambiguities in
the act which make it difficult to determine the legis-
lative intent, as to whether the act is mandatory or
permissive, as to first-class cities in first-class counties.
In resolving this ambiguity, the act should be har-
monized, if possible, with the prior existing power of
cities of the first class, rather than construed to nullify
that power.

A further aid to construction is to be found
in the title of the act.  It is a well-recognized rule of
statutory construction that the title of an act may be
resorted to as one of the means of ascertaining legis-
lative intent, when because of ambiguity in the lan-

guage that intent cannot be gathered from the body of the act. *State ex rel. Swan v. Taylor*, 21 Wash. 672, 59 Pac. 489; *Thayer v. Snohomish Logging Co.*, 101 Wash. 458, 172 Pac. 552; *State v. Crothers*, 118 Wash. 226, 203 Pac. 74.

It will be noticed that, in the title of the act, the word "enabling" is used. It is apparent, from an inspection of the legislative history of the act (house bill No. 90), that the word was not put in the title inadvertently.

■ It is also well established that, where an act is ambiguous, the legislative history may be resorted to in an attempt to determine the legislative intent. *Burdick v. Kimball*, 53 Wash. 198, 101 Pac. 845; *State ex rel. Griffin v. Superior Court*, 70 Wash. 545, 127 Pac. 120; *State ex rel. Northwest Airlines v. Hoover*, 200 Wash. 277, 93 P. (2d) 346.

■ House bill No. 90 was introduced in the house and first read by title on January 23, 1939, the title being as follows: "An Act creating and establishing retirement and pension systems for . . . cities of the first class." House journal, 1939, p. 60. The bill was referred to the committee on cities of the first class, which recommended several amendments to the bill, upon its second reading in the house on February 24, 1939. One of the proposed amendments was that, in line 1 of the title, the words "creating and establishing retirement," be stricken, and in place of the stricken words the following be substituted: "Enabling the creation and establishment of retiring." This amendment was adopted. House journal, 1939, pp. 425-426.

As amended, engrossed house bill No. 90 was read the first and second times in the senate on March 1, 1939, and referred to the committee on first class cities. Senate journal, 1939, p. 451. This committee pro-

posed several amendments, one of which was to restore the original wording of the title, with the additional alteration that after the words "employees of" the words "cities of the first class" should be deleted, and the following words substituted: "First-class cities in first-class counties." Had these proposed amendments been adopted by the senate, the title would then have read: "An act creating and establishing retirement and pension systems for superannuated and disabled officers and employees of first-class cities in first-class counties." This is an exact statement of appellants' contention as to the purpose of the act. The proposed amendments were tabled, and the bill was passed by the senate on March 9, 1939, containing the language now to be found in the title.

In view of this legislative history, it seems to us the title of this act must be accepted as a clear expression of legislative intent that chapter 207 was passed as an enabling act only. For this court, in the face of this history, and in view of the fact that the body of the act does not compel such an interpretation, to decide that the act establishes a mandatory and exclusive pension system, would be to violate an express legislative mandate.

Appellants further contend that § 28 of chapter 207, p. 795, supports their claim that it was the intention of the legislature, in passing chapter 207, to make the act mandatory. Section 28 provides:

"Nothing in this act shall repeal, supersede, alter, amend or be regarded as a substitute for any existing retirement or pension system, duly established by city ordinance." Rem. Rev. Stat. (Sup.), § 9592-128 [P. C. § 707-78].

Appellants argue that this clause should be considered by the court in an endeavor to ascertain the legislative intent, and that, when so considered, the clause

is indicative that the legislature intended that chapter 207 be mandatory, for otherwise § 28 would be meaningless and serve no purpose; that is, that the clause would not have been inserted had the legislature intended this statute to be permissive only.

We cannot agree with this contention. It does not appear to us that § 28 lacks purpose, if the act be construed as permissive only. As we read the clause, its obvious intent was to clarify any doubt which otherwise might have been entertained relative to the validity of pension systems duly established by city ordinances prior to the passage of chapter 207, by cities of the first class, acting pursuant to charter provisions. As stated earlier in this opinion, the legislature had not previously granted to such cities the express power to establish retirement or pension systems. It may well have feared that the enactment of chapter 207 would create the inference that this was a field in which first-class cities previously lacked power to act. If such conclusion were drawn, it would necessarily invalidate existing pension systems in cities which had assumed this power to exist. If § 28 was intended to guard against such a result, and we believe that to have been its purpose, then its inclusion is neither inconsistent with our view that the act is permissive only, nor indicative that the act was intended to be mandatory. Section 28 was inserted in the exercise of a superabundance of caution, to make certain that prior pension systems should not be disturbed by the enactment of chapter 207.

Respondent makes certain other contentions involving the inability of the city of Tacoma to adopt the provisions of chapter 207, also contending that the city ordinance is a substantial compliance with the

560

state law. In view of the conclusion we have reached, we do not deem it necessary to discuss these questions.

For the reasons herein assigned, the judgment of the trial court is affirmed.

ALL CONCUR.