COUNTY OF WESTCHESTER, Respondent, *v.* VILLAGE OF MAMARONECK, Appellant.

Second Department, November 30, 1964.

*Anthony Sansone* for appellant.

*Gordon Miller, County Attorney (George S. Donaldson* and *Arthur T. Connick* of counsel), for respondent.

KLEINFELD, J.   The issue in this case is whether a county is exempt from village zoning ordinances and building codes when it builds an addition to a county sewage disposal plant located within the village.   Special Term held that it was exempt; the village appeals.

A brief statement of the facts will suffice:

In 1952, the Interstate Sanitation Commission ordered Westchester County to take steps to abate pollution in certain Hudson River and Long Island Sound areas into which sewage was being discharged.   One of the planned measures was a reconstruction of the Mamaroneck Valley Sewer Project.   Between 1952 and 1959, the county's Public Works Department delayed work on this project because it was busy with other major projects in Yonkers and New Rochelle.   In 1960, the Interstate Sanitation Commission notified the county that it would permit no more delays, and that the Mamaroneck project had to be started by August, 1961.

In May, 1962 the financing of this project was approved by the County Board of Supervisors, and a $4,520,000 bond issue for its construction was approved by the voters in November, 1962. On November 9, 1962 the county submitted plans for the reconstruction of the Mamaroneck Sanitary Sewer Plant to the State Commissioner of Health for his approval and issuance of a permit, as required by section 1230 of the Public Health Law. Pursuant to a request from the Village of Mamaroneck, the State Health Commissioner directed a hearing on the application before a hearing officer; a three-day hearing was held in January, 1963; the hearing officer submitted his findings to the Commissioner; and on April 19, 1963 the Commissioner approved the county's plans for enlargement of the sewage treatment plant at Harbor Island in the Village of Mamaroneck. The village took an appeal to the Water Resources Commission; on November 14, 1963 the Water Resources Commission affirmed the Health Commissioner's decision in all respects. In the meantime, on June 27, 1963, the Federal Public Health Service (Department of Health, Education and Welfare) had approved the county's plans and had authorized the taking of bids for the construction work. The county then let five contracts for the job, at a total cost of over four million dollars.

In late August, 1963 the Village Attorney notified the county and its contractors that the latter would violate the village building regulations, its local laws and the State Executive Law, and would be subject to penalties of $100 a day if they performed the construction work without first obtaining a permit from the village. On August 26, 1963 the construction work was started. On September 3, 1963 the village sued one of the contractors for penalties of $500 by reason of his violation of its ordinances. On September 9, 1963 the County Attorney wrote to the Village Board of Trustees to stop interfering with the construction work. Despite this warning, the village thereafter brought another action against the contractor, this time for penalties of $600.

On September 18, 1963 the county brought this action to enjoin the village from interfering with the construction work; simultaneously, it moved for a temporary injunction. By agreement of the parties, the motion for a temporary injunction was treated as a motion for summary judgment by each of the parties. The parties agreed that the county had never applied to the village authorities for a building permit for the reconstruction of the sewer plant; that the rebuilt structure would violate the zoning ordinance; that its erection without a permit would violate Village Local Law No. 2 of 1952; and that the basic question

was whether the county was subject to and bound by the village zoning ordinance, local law, and building code. Special Term held that the construction here involved was a governmental function and that the county consequently was exempt from said local laws and regulations; and it granted a judgment permanently enjoining the village from interfering with the work.

On appeal, the village concedes that the reconstruction of the sewer plant is a governmental function. It contends, however, that the county nevertheless must comply with the village zoning ordinance, local law and building code. We think the village is wrong.

It is now well settled that a county or municipality is not subject to zoning restrictions in the performance of its governmental functions (*Nehrbas* v. *Incorporated Vil. of Lloyd Harbor,* 2 N Y 2d 190; *Oswald* v. *Westchester County Park Comm.,* 234 N. Y. S. 2d 465, affd. 18 A D 2d 1139; *Village of Larchmont* v. *Town of Mamaroneck,* 239 N. Y. 551). This exemption from zoning ordinances exists whether it be a municipality exercising a governmental function in "violation" of its own zoning ordinance (as in *Nehrbas, supra*); a village exercising a governmental function in "violation" of a town's zoning ordinance (as in *Village of Larchmont, supra*); or a county exercising a governmental function in "violation" of a town's zoning ordinance (as in *Oswald, supra*). As the court said in *Nehrbas* (*supra,* pp. 193–194): "In the very nature of things, a municipality must have the power to select the site of buildings or other structures for the performance of its governmental duties. Accordingly, it necessarily follows, a village is not subject to zoning restrictions in the performance of its governmental * * * activities. * * * In the *Village of Larchmont* case * * * the village had its water supply system in the residential district of the neighboring Town of Mamaroneck and sought to construct a small building near its pump works. Although the town ordinance explicitly prohibited such use in a residential area, the town was enjoined from enforcing it against the village in view of the fact that the building in question was designed for a governmental use."

The question of compliance with the village building code is somewhat closer. On this point there have been a number of decisions by the New York State Comptroller, but apparently none by the New York courts. The Comptroller has ruled that school construction is exempt from municipal building codes and ordinances; that school districts need not obtain building permits from the municipalities in which the schools are to be

built; and that school construction jobs are not subject to inspection by municipal building inspectors (16 Op. St. Comp., 1960, p. 384; 6 Op. St. Comp., 1950, p. 376). But the Comptroller has also ruled that the construction of government buildings, other than schools, is subject to municipal building codes and ordinances; that municipal building permits must be obtained for their construction; and that the municipal building inspectors have jurisdiction to inspect them (Op. St. Comp., 1958, No. 961, unreported [County Office Building]; 9 Op. St. Comp., 1953, No. 6205, p. 220 [garage for a County Home]; 15 Op. St. Comp., 1959, No. 650, p. 295 [County Jail]).

In these seemingly contradictory rulings, the Comptroller drew a distinction between schools and other government buildings. The distinction he drew was that sections 408 to 411 of the Education Law confer on the State Education Commissioner such broad powers of supervision over school construction that the Legislature must have intended him to have exclusive control over such construction; but that with respect to other government buildings, there was no such broad power of supervision given to any State official, and that the grant to villages of the general power to regulate building construction, contained in the statute (Village Law, § 89, subd. 7; § 90-a), evidenced legislative intent that government buildings (other than schools) be required to comply with village building codes and ordinances.

For several reasons we disagree with the Comptroller's rulings regarding nonschool buildings. First, outside New York the clear weight of authority holds to the contrary, on the broad ground that " the powers, duties and responsibilities assigned and delegated to a state agency performing a governmental function must be exercised free of control or supervision by a municipality within whose corporate limits the state agency must act " (*Board of Regents of Univs.* v. *City of Tempe,* 88 Ariz. 299, 311). This statement of principle accords with the rationale of the New York rule exempting the exercise of governmental duties from local zoning ordinances (see *Nehrbas* v. *Incorporated Vil. of Lloyd Harbor,* 2 N Y 2d 190, 193, *supra*). Second, there is no evidence of a legislative intent that the county must obtain a village building permit and comply with village building codes, since the Legislature explicitly authorized the County Public Works Commissioner to draw plans for such sewer plants and required approval of the plans and a permit from the State Health Commissioner, without mentioning approval or permits from municipal authorities. Third, it would be anomalous to permit a small village to frustrate or in any way impede the county in its performance of an essential

governmental duty for the benefit of the health and welfare of residents of the entire county. This is particularly so after the county has been ordered to do its duty promptly by an interstate body (the Interstate Sanitation Commission), and its plans for performance of that duty have been approved by two State bodies (the Department of Health, after a three-day hearing; the Water Resources Commission, after an appeal from the Health Department's ruling), and by a Federal body (the United States Public Health Service).

In our opinion, broad principles of sovereignty require that a State or its agency or subdivision performing a governmental function be free of local control. This principle is clearly stated in a very recent Arizona case (*Board of Regents of Univs.* v. *City of Tempe,* 88 Ariz. 299, *supra*). There, the court said (pp. 309, 311): " The foregoing authorities persuasively support the claimed immunity of the Board of Regents [from the city's building code] in the instant case. The underlying rationale is that a State agency delegated by law the responsibility of performing a governmental function is not subject to the general police powers of a municipal corporation. * * * The essential point is that the powers, duties and responsibilities assigned and delegated to a state agency performing a governmental function must be exercised free of control or supervision by a municipality within whose corporate limits the state agency must act."

In *Board of Regents* (*supra*) the court, in support of its holding, collated and cited cases from many different parts of the United States — Kentucky, Wisconsin, Utah, California, Tennessee, New Jersey, Missouri, Alabama and West Virginia. The Kentucky case (a leading authority on this point) held that a city could not apply its fire escape ordinance to a State-created asylum for the blind (*Kentucky Inst. for Educ. of Blind* v. *City of Louisville,* 123 Ky. 767). In that case, the court said (pp. 774–775): " The principle is that the State, when creating municipal governments, does not cede to them any control of the state's property situated within them, nor over any property which the State has authorized another body or power to control. * * * How can the city have ever a superior authority to the State over the latter's own property, or in its control and management? From the nature of things it cannot have."

A similar holding in the California case of *Hall* v. *City of Taft* (47 Cal. 2d 177) was based primarily on the ground that " the construction and maintenance of a school building is a sovereign activity of the state " (*Town of Atherton* v. *Superior*

*Court,* 159 Cal. App. 2d 417, 428). In New Jersey, the same rule of exemption from local building codes was applied to the building of service stations by the New Jersey Highway Authority (*Town of Bloomfield* v. *New Jersey Highway Auth.,* 18 N. J. 237). In West Virginia, the rule was applied to the erection of a State office building (*City of Charleston* v. *Southeastern Constr. Co.,* 134 W. Va. 666). In Tennessee, it was applied to the erection of a State hospital (*Davidson County* v. *Harmon,* 200 Tenn. 575).

We think the rule laid down by the out-of-State cases (representing the clear weight of authority) is logical and sound; and in the absence of any New York cases on this precise point we are inclined to follow it. Also, as previously noted, it appears to accord with the rationale of the *Nehrbas* holding (2 N Y 2d 190, 193, *supra*) regarding exemption from local zoning ordinance.

On the narrower ground of legislative intent, we see no indication that the Legislature intended to require compliance with local building codes. It is true that our statute (Village Law, § 90-a) authorizes the village boards of trustees, in broad terms, to adopt building codes for the construction of " all buildings or structures " within village limits. But section 163 (art. 9, tit. C) of the Westchester County Administrative Code (a State statute — L. 1948, ch. 852) provides that the County Commissioner of Public Works shall be in charge of county sewers and sewage plants and that the construction of sewers, etc., for public health and welfare, are public and county purposes; section 164 directs the County Commissioner of Public Works, *inter alia,* to prepare preliminary plans for such sewage plants as he deems necessary; and section 165 directs that before proceeding with the construction of such sewage plants, " plans and specifications therefor shall be submitted to the state department of health for approval and a permit obtained from the state department of health pursuant to the provisions of the public health law applicable thereto." The applicable section of the Public Health Law is section 1230. It provides that no permit for a new or rebuilt disposal system shall be issued by the State Health Commissioner " until the plans therefor have first been submitted to and approved by the department " (subd. 3).

When the Westchester County Administrative Code (L. 1948, ch. 852) was enacted by the Legislature, it must have known that there were over 40 municipalities in Westchester County, each with its own building code; and it must have known that every sewage plant in that county would necessarily be located

within one or another of those municipalities. If it intended that before erecting such sewage plants the county be required to obtain local building permits from the municipalities, in addition to the permits required from the State Health Commissioner, it could easily have so provided. The fact that the Legislature did not so provide indicates that it did not so intend, and that on the contrary it intended to vest complete jurisdiction over county sewers and sewage plants solely in the County Commissioner of Public Works and the State Health Commissioner, without any interference from local municipal authorities.

The State Comptroller, in his contrary opinion holding that a county jail is subject to a village building code (15 Op. St. Comp., 1959, No. 650, p. 295), said that it must be so because the village "inspects such buildings to insure and preserve municipal safety and health." Certainly the State Health Commissioner is at least as competent as a local building inspector to "insure and preserve municipal safety and health"; and certainly he has these aims in mind when he approves plans for a sewage plant and issues a permit therefor. Indeed, in a case such as the one at bar, he has in mind not only "municipal" safety and health, but the safety and health of the entire county, the State and even neighboring States.

Hence, in cases such as this one, the Legislature could not have intended that the county be required to comply with the local building code and obtain a local building permit in addition to the permit required from the State Health Commissioner. Such requirement would in effect empower a Village Building Inspector to impede or even frustrate an essential sewer project needed for the safety and health of the residents of a large area embracing parts of at least two and perhaps three States. It was never contemplated that a local official should be vested with such a far-reaching veto power.*

In this case, the plans for the sewage plant were drawn by the county officer (the County Public Works Commissioner) vested by statute with that authority; the plans were approved by the State officer (the State Health Commissioner) vested by statute with that authority, and he issued a permit therefor pursuant to his statutory authority; the village demanded and obtained a three-day hearing by the State Health Department prior to the issuance of the permit by the Health Commissioner; the village appealed from the Health Commissioner's decision

---

* Cf. *Matter of Wiltwyck School* v. *Hill* (14 A D 2d 198, dissenting opinion pp. 226–229, revd. 11 N Y 2d 182).

to the State Water Resources Commission, and that body confirmed the approval of the plans and the issuance of the permit; a Federal body (the United States Public Health Service) had approved the project; and an interstate body (the Interstate Sanitation Commission) had urgently demanded that this sewage plant be built. Certainly the village has had its day in court and has had every reasonable opportunity to present objections to the propriety of the project, its location, the manner of its construction, etc. It is not entitled to more. Specifically, it is not entitled to further opportunities to impede or hamstring this essential project by requiring the county to obtain a village building permit and to comply with the parochial provisions of a village building code or zoning ordinance.

The order and judgment, which decrees that the sewer plant reconstruction work is exempt from the village zoning ordinance and building code and which restrains the village from interfering with such work, should be affirmed, without costs.

BELDOCK, P. J., CHRIST, HILL and RABIN, JJ., concur.

Order and judgment affirmed, without costs.