[No. 38572.    En Banc.    November 9, 1966.]

THE TOWN OF STEILACOOM, *Respondent,* v. FRANCES E.
THOMPSON *et al.; Respondents,* MAYER BUILT
HOMES, INC., *Petitioner.**

*Reported in 419 P.2d 989.

*Blair, Thomas, O'Hern & Daheim* and *Warren J. Daheim,* for petitioner.

*Ronald L. Hendry,* for respondent.

HALE, J.—Finding a just balance between public benefit and private detriment constitutes one of the great functions of our judicial system. This is such a case.

Steilacoom, a community of the fourth class in Pierce County, lies on a side hill in a natural basin which drains down to Puget Sound. Water from areas outside the corporate limits filters through the town above and below the surface. The town adopted plans for, issued revenue bonds to finance, and began construction of a sanitary sewer system including a sewage treatment plant of sufficient capacity to accommodate the whole town and a large part of its surrounding drainage area.

Bridgeport Estates, Inc., is developing a large tract of land known as Arrowhead 5th Addition, for residential purposes outside the city limits of Steilacoom. The corporation wishes to put all of the houses in the addition on sanitary sewers instead of individual septic tanks and, accordingly, offered to construct a sewer extension connecting its sewer system to the Steilacoom sanitary sewer system and treatment plant. The contract arising from this offer between the land developing corporation and the town of Steilacoom precipitated this certiorari application.

The town of Steilacoom and Bridgeport Estates, Inc., October 20, 1964, executed a formal written agreement for the construction of a sewer extension connecting Bridgeport's Arrowhead 5th Addition development with Steilacoom's sanitary sewer system. In this agreement, Bridgeport promised to construct and install at its own expense a sanitary sewer system to serve all residential lots within the 5th Addition and to connect (with few exceptions) all houses therein to this system. Bridgeport agreed also to advance all funds, including the awards in

condemnation and a $2,500 attorney's fee, necessary to construct the sewer extension line connecting its sewer system with the Steilacoom system. The agreement declared that, after completion, the town would own both systems, and acknowledged that the town, as owner, should maintain and operate the 5th Addition sewer system, the extension line, the town's system, and collect and retain all sewer service fees in accordance with the town's regular charges for sewer service.

Steilacoom agreed to collect from each householder connecting to the sewer in Bridgeport's residential addition its customary connection fee of $75 and from such fees reimburse Bridgeport Estates for the costs incurred in building both the Arrowhead 5th Addition sanitary sewer system and the sewer extension line.

In this contract, Steilacoom promised to condemn and acquire a right of way and easement for the extension sewer line as petitioner in its own name; and Bridgeport Estates, as we have indicated, promised to advance the costs of condemnation proceedings including the condemnation awards and attorney's fee as a part of the reimbursable costs of construction.

Thereupon, the town of Steilacoom, in pursuance of this contract and an appropriate ordinance, brought its petition in eminent domain to condemn and acquire a right-of-way easement through defendants' property. Defendants challenge the constitutionality of the taking, and, from an order of public use and necessity entered after formal trial, bring this petition in certiorari to prevent the trial court from proceeding to try the issue of compensation and to prevent a final adjudication establishing an easement for the extension line in the town of Steilacoom.

Steilacoom made the agreement with Bridgeport Estates under RCW 35.91.020[1], a statute which authorizes a town

[1]"The governing body of any city, town, sewer district, water district or drainage district, hereinafter referred to as a 'municipality' may contract with owners of real estate for the construction of storm, sanitary or combination sewers, pumping stations and disposal plants, water mains, hydrants or appurtenances, hereinafter called 'water or sewer

council to contract with real-estate owners for the construction of storm and sanitary sewers, pumping stations and disposal plants inside the boundaries or within 4 miles of the town and to reimburse the contracting owner from users' fees and charges.

The case turns on a single question: Was the town, in making this contract with a private builder, engaging in a project of public benefit and necessity, or was it essentially conferring its powers of eminent domain upon and for the personal gain of a private builder?

No question would arise had Steilacoom undertaken to build the sewer system exclusively with municipal funds raised through the issuance of bonds or warrants as allowed by RCW 8.12.220 in accordance with general powers of eminent domain to construct sewers under RCW 35.27.380; or through other statutory methods relating generally to municipal improvements; or under the aegis of RCW 35.67-.020 giving cities and towns plenary statutory powers to construct, condemn, purchase, manage, control and regulate sewerage and sewage disposal systems and to charge the users thereof reasonable rates. *Morse v. Wise,* 37 Wn.2d

facilities', within their boundaries or within four miles from their corporate limits connecting with the public water or sewerage system to serve the area in which the real estate of such owners is located, and to provide for a period of not to exceed fifteen years for the reimbursement of such owners and their assigns by any owner of real estate who did not contribute to the original cost of such water or sewer facilities and who subsequently tap onto or use the same of a fair pro rata share of the cost of the construction of said water or sewer facilities, including not only those directly connected thereto, but also users connected to laterals or branches connecting thereto, subject to such reasonable rules and regulations as the governing body of such municipality may provide or contract, and notwithstanding the provisions of any other law. The provisions of such contract shall not be effective as to any owner of real estate not a party thereto unless such contract shall have been recorded in the office of the county auditor of the county in which the real estate of such owner is located prior to the time such owner taps into or connects to said water or sewer facilities. The power of the governing body of such municipality to so contract shall also apply to water or sewer facilities in process of construction on June 10, 1959 or which shall not have been finally approved or accepted for full maintenance and operation by such municipality upon June 10, 1959." RCW 35.91.020.

806, 226 P.2d 214 (1951). The case arises because the town sought to accomplish these ends by acting under a statute which apparently authorized it to accept an advance of private funds from one who might stand in a position to benefit more directly from the project individually than would the public generally.

In its findings, the trial court gave sharp, clear definition to the issues in finding specifically that the town had budgeted no funds either for construction of the sewers or the legal costs of condemnation and would not have built the sewer extension but for Bridgeport Estates' request and undertaking to advance all legal construction costs.

From substantial evidence, the trial court found, too, that, if all homes to be built in the 5th Arrowhead Addition are connected to septic tanks, effluent therefrom will drain through the town and cause it eventual pollution problems; that taking and damaging defendants' property for a right-of-way easement was reasonably necessary for public use and benefit; that the route taken was feasible; and that defendants' proposed alternative routes were not advisable or practical.

■ Sanitary sewers and sewage treatment facilities are, by their very nature, both public necessities and conveniences. 2 Nichols, Eminent Domain § 7.5154 (3d rev. ed. 1963); Annotation, 169 A.L.R. 576. Building, maintaining and operating them are governmental functions for which the municipality may exercise the powers of eminent domain. *Snavely v. Goldendale,* 10 Wn.2d 453, 117 P.2d 221 (1941); *State ex rel. Church v. Superior Court,* 40 Wn.2d 90, 240 P.2d 1208 (1952); *Medical Lake v. Brown,* 63 Wn.2d 41, 385 P.2d 387 (1963). Even though some property owners may be greatly benefited by a public improvement and others slightly or even negligibly so, the project does not thereby lose its public character if it is in essence one for the public's benefit and convenience. *In re Bellevue,* 62 Wn.2d 458, 383 P.2d 286 (1963); 11 McQuillin, Municipal Corporations § 32.40 (3d rev. ed. 1964); 2 Nichols, Eminent Domain §§ 7.222(2) and 7.222(5) (3d rev. ed. 1963). Indeed, scarcely a public improvement can be conceived that

does not benefit some residents of the municipality more than others.

That the trial judge applied the foregoing principle may be seen in his oral commentary announcing his decision at end of trial:

> Now, the problem of the contract between the city and Bridgeport Estates which includes the provisions that the contractor will deposit with the Town of Steilacoom the sum of $2,500 and will pay attorney fees, and also pay the costs of the condemnation award should the action proceed that far, does not in my opinion, at least in the evidence produced in this case, change the action from one in condemnation for public use to one in condemnation for private use. The Court is not unaware that of two contractors involved in this action one of them is being put in a somewhat disadvantageous position, while the other is being put in a more favorable position, but it seems to me that these things result in practically every condemnation action. Someone gets hurt a little bit and someone gets more favorable treatment, and I don't believe that in this case, this fact by itself is sufficient for the Court to find that it would outweigh the finding of public use and the finding of necessity.

■ Thus, the trial court correctly ruled that, considering the likely danger of pollution and contamination facing the residents of Steilacoom from septic tank effluent draining into and through the town from the surrounding terrain, the construction of a sewer extension through petitioner's property into an adjoining real-estate development constituted a project both necessary to and for the convenience of the town of Steilacoom. That a private developer stands to derive a direct benefit from the sewer extension does not change the public character of this sewer project nor deprive it of its essence as one for a public benefit and convenience. Protecting the public health and comfort, by means of a sewer extension line connecting to a sewer system in a sizeable drainage area adjoining and of higher elevation than the town, constituted an undertaking for the benefit and convenience of the town.

One other question remains. Petitioner says that the town council acted arbitrarily, capriciously and unreasonably in

several respects: in designating a right of way through its property, in rejecting its proposed alternative routes to accomplish the same public purpose, and in exercising the powers of eminent domain at a time when the dangers of pollution and contamination were remote and conjectural.

The courts ought not substitute their judgment for that of the administrative or legislative agency charged by law with choosing the methods or means of accomplishing the public purpose.

As the trial court expressed it in its oral opinion:

Action, when exercised honestly, fairly and upon due consideration is not arbitrary and capricious, even though there be room for a difference of opinion, upon the course to follow or a belief by the reviewing authority that an erroneous conclusion has been reached, and putting the matter to the tests set down there, I don't believe that the action is arbitrary or capricious, and again I don't believe that the evidence is such that the Court can find that this is purely an action to benefit Bridgeport Estates, and that using the Town of Steilacoom as plaintiff is only a cover-up for that purpose, and I think the evidence is to the contrary.

See *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955); *Smith v. Hollenbeck,* 48 Wn.2d 461, 294 P.2d 921 (1956); *Deaconess Hospital v. State Highway Comm'n,* 66 Wn.2d 378, 403 P.2d 54 (1965).

Testing whether a public authority has been arbitrary or capricious in taking steps to avert or alleviate a public danger prematurely, invokes the principle laid down in *Tacoma v. Welcker,* 65 Wn.2d 677, 399 P.2d 330 (1965), that a " 'stitch in time' has never been considered capricious" and that a public authority may provide "reasonable safeguards against a reasonably realistic and foreseeable future danger of contamination." Petitioner has not made out a case of arbitrary, capricious or unreasonable action.

As to the advance of attorney's fees and awards because the town may, under the statute (RCW 35.91.020), contract for the construction of the sewer extension, it follows that such contract may properly include all of those steps reasonably necessary to complete the project. Among

712

these steps are the award in condemnation for the taking and damaging, together with attorney's fees reasonably and necessarily incurred in preparing for and trying the condemnation case, and the professional handling of such other legal matters as must be accomplished before construction can lawfully be completed.

The petition is, therefore, dismissed, and the trial court authorized to proceed with the condemnation case.

ROSELLINI, C. J., HILL, DONWORTH, FINLEY, WEAVER, HUNTER, and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.

*Reported in 419 P.2d 993.