[No. 40120.   En Banc.   February 11, 1970.]

EDMONDS SCHOOL DISTRICT No. 15, *Appellant,* v. THE CITY OF MOUNTLAKE TERRACE, *Respondent.**

*Williams, Thomson & Cole,* by *Curtis P. Thomson,* for appellant.

*Jordan, Adair, Kasperson & Hennessey,* by *William F. Hennessey,* for respondent.

*The Attorney General* and *Thomas C. McKinnon, Assistant,* amici curiae.

*Reported in 465 P.2d 177.

HALE, J.—A kind of sibling rivalry in governmental affairs brings the Edmonds School District and the City of Mountlake Terrace here on a declaratory judgment suit. The school district's claim of sovereign immunity from the city's building code is met by the city's equally vehement claim of sovereign authority to enforce the code. Failing to obtain in the superior court a declaratory judgment that it need not comply with the building code, the district now appeals from a judgment favoring its intergovernmental rival.

Edmonds School District No. 15, a district of the first class, has several incorporated municipalities within its boundaries. It intends to enlarge its high school in Mountlake Terrace, a city of the third class in Snohomish County, by constructing an addition to the building. Acting according to its regular procedures, the school district retained architects who in turn prepared plans and specifications for the addition to Mountlake Terrace High School. These plans, insofar as existing law requires, were duly approved as complying with state requirements. Contracts were awarded on competitive bids and on August 16, 1966, the district gave the successful contractor a "Statement of Intent" that he could begin construction.

The defendant city, through its police chief, then notified the district and the building contractor that no building permit had been issued by the city; that to construct an addition to a building within the city's corporate limits without a permit constituted a misdemeanor violation of the city's building code and would result in the arrest and prosecution of the contractor; and that the proposed addition would violate the minimum setback requirements prescribed by the City of Mountlake Terrace's building code. This warning brought the building project to a halt.

The school district brings this suit for a declaratory judgment asking that ordinance No. 391, the building code of the City of Mountlake Terrace, be held inapplicable to and not binding upon the school district in the construction of its high school addition. From a summary judgment deny-

ing this relief and dismissing the complaint with prejudice, the district appeals.

Each party claims superior rights over the other deriving from their common source of governmental power, the sovereign state. They present two main questions: Has the state designated which of the two agencies should exercise its sovereign authority with respect to building permits and minimum setback requirements? Is there an irreconcilable dichotomy between the delegation to the school district of the sovereign's constitutional duty to educate the children of the state and the city's exercise of the police power in adopting and enforcing a building code?

Are the two sets of delegated powers in conflict? The school district says that the city, in forcing compliance with its building code, is transgressing and trespassing upon its powers and duties as an agency of the sovereign state, to build, operate and maintain public high schools. The district's function of providing the land, materials and designs for school buildings cannot, it contends, be lawfully preempted nor frustrated in any way by a municipality any more than a city could enforce its standards upon the sovereign state against its will.

■■ Education is one of the paramount duties of the state. The duty and power to educate the people are not only inherent qualities of sovereignty but are expressly made an attribute of sovereignty in the state of Washington by the state constitution. Const. art. 9, §§ 1, 2. The state exercises its sovereign powers and fulfills its duties of providing education largely by means of a public school system under the direction and administration of the State Superintendent of Public Instruction, State Board of Education, school districts and county school boards.

School districts are, in law, municipal corporations with direct authority to establish, maintain and operate public schools and to erect and maintain buildings for that and allied purposes. RCW 28.58. In essence, a school district is a corporate arm of the state established as a means of carrying out the state's constitutional duties (RCW 28.57.135)

and exercising the sovereign's powers in providing education. The state has thus made the local school district its corporate agency for the administration of a constitutionally required system of free public education. *State ex rel. DuPont-Fort Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963); *Briscoe v. School Dist. 123,* 32 Wn.2d 353, 201 P.2d 697 (1949); *School Dist. 37 v. Isackson,* 92 F.2d 768 (9th Cir. 1937). The state now requires school districts to have the plans and specifications, including those features pertaining to heating, lighting, ventilating and safety, approved by the county superintendent of schools before entering into any school building construction contracts. RCW 28.58.310.

But in other spheres of governmental activity, the state has allocated some of its sovereign powers and responsibilities to cities, too. Under Const. art. 11, § 11, a city may make and enforce all police and sanitary regulations within its limits which do not conflict with general laws. By statute, cities are charged with the sovereign exercise of the police power to maintain peace and good government and to provide for the general welfare of their inhabitants through law not inconsistent with the constitution and statutes of the state. RCW 35.24.290(18). A city and other kinds of municipal corporations, too, are agencies of the state to accomplish these ends. *Columbia Irr. Dist. v. Benton County,* 149 Wash. 234, 270 P. 813 (1928). Among these police powers, of course, is the capability of adopting and enforcing building codes. Just as the state has vested in the state superintendent, state board, and the school districts many of its attributes of sovereignty pertaining to education, it has done the same to incorporated cities with respect to the general police powers, among which are zoning and building regulations.

The City of Mountlake Terrace cannot, under existing statutes, supersede, set aside, invalidate or impair the educational processes of or limit the standards prescribed by the state for the operation of the public schools (*State ex rel. School Dist. 37 v. Clark County,* 177 Wash. 314, 31 P.2d

897 (1934)), for that would be an infringement upon state sovereignty. But the state, in delegating to school districts power to build, maintain and operate public schools, has not prescribed minimum standards for street offsets, nor directed that building permits be waived in the construction of public school buildings or additions. It has left its subordinate municipalities free to regulate each other in those activities which traditionally are thought to lie within their particular competence and are more proximate to their respective functions. Fixing minimum offsets for streets, alleys, front, side and back yards would, unless the state has said otherwise, fit more relevantly into a city building code than into the general rules for the operation and maintenance of a high school.

Two cases from California aptly illustrate the difference in authority over construction standards between a school district and a municipality before and after the state has adopted a comprehensive and detailed school construction code. In 1913, the State of California had no detailed and comprehensive system of regulations and construction standards for school buildings. Accordingly, when a dispute arose between the school district and the City of Pasadena concerning the city's laws relating to construction, the Supreme Court of California ruled that the school district, in constructing a school within the city had to comply with the city's building regulations. *Pasadena School Dist. v. Pasadena*, 166 Cal. 7, 134 P. 985 (1913). Thereafter, the California legislature adopted, in its education code, a comprehensive system for the construction of school buildings. This code directed that the state department of education establish detailed standards for school buildings and examine and approve all school construction plans and specifications which met the standards and disapprove those which did not. No district could build, or proceed with construction of, or spend any public money on school construction until the designated agency of the department of education had given its approval.

Then, in 1956, after the State of California had adopted this construction code and under it the state department of

education had promulgated even more detailed and comprehensive requirements, there came before the Supreme Court of California a case similar to that of *Pasadena School Dist. v. Pasadena, supra.* Recognizing that, since the *Pasadena* case in 1913, the state had by legislation and delegation to administrative agencies preempted the field of regulating school construction and adopted detailed and comprehensive standards for school construction and set up governmental machinery for their enforcement by an agency other than the city in which the district lay, the court held that the school district's construction did not fall within nor could it be controlled by a city building code. *Hall v. City of Taft,* 47 Cal. 2d 177, 302 P.2d 574 (1956).

There is little doubt that the State of Washington, as well as the State of California has the constitutional power to prescribe standards for and regulate school construction, and may, as an attribute of its sovereignty, deprive municipalities of any voice in these matters. But the state has not thus far exercised this power nor prohibited cities from exacting a building permit fee, nor relieved school districts within the corporate limits of a city from paying such fee or complying with the setback provisions of the municipal building code. Unless the state has, so to speak, preempted the field of building standards or specifically ousted the municipality of jurisdiction over school construction, we think the school district is obliged to comply with the minimum standards set forth in the city's building code.

Arguments of the district and amicus curiae convey a concern that, if the court holds a school district amenable to a municipal building code, the ruling will ultimately operate to permit cities—and counties—to interfere with or impinge upon the operation, management and control of the public schools. These fears, we think, are illusory. In the matter of education, a school district is deemed to be an arm of the state for the administration of the school system. *Howard v. Tacoma School Dist. 10,* 88 Wash. 167, 152 P. 1004 (1915); *State ex rel. DuPont-Fort Lewis School Dist. 7 v. Bruno, supra.* It follows that the school district exercises the paramount power of the state in providing

education and carries out the will of the sovereign state as to all matters involved in the educational processes and in the conduct, operation and management of the schools. We find nothing in the constitution or existing law which would enable a city legislative body to trespass or impinge upon or interfere with the conduct and operation of the public schools. We do not apprehend that requiring the Edmonds School District to pay for a building permit and set back its new addition from the street or property lines in accordance with the city building code empowers the city to assume any responsibilities or control over the way the educational process is conducted. Such matters as curriculum, textbooks, teaching methods, grading, school hours and holidays, extracurricular school activities or those concerning the selection, tenure and compensation of school personnel—indeed, the thousand and one activities and facilities by which the school districts of the State of Washington afford an education to the children of the state, and adults, too—remain outside of the authority and control of the cities.

Affirmed.

HUNTER, C. J., FINLEY, ROSELLINI, and HAMILTON, JJ., concur.

NEILL, J. (concurring)—I concur in the result, but feel obliged to point out the limitation of the issue before us. As is aptly stated in the brief of respondent city, this case does not involve "the situation where the city is attempting to regulate construction of a state university, we are not attempting to assert that a land use zone prohibits construction of schools; and we do not have a situation where there is in existence a 'state building code.' "

All that is before us is the right of a city to exercise its constitutional authority to promulgate local police power regulations in a field (a) where the state has not enacted general laws; (b) where regulations are applicable to a school district as a municipal corporation, as distinguished from the state itself acting through a department, institu-

tion or agency; and (c) where otherwise the district would neither have nor be governed by established, ascertainable standards for building construction. *See Board of Regents v. Tempe,* 88 Ariz. 299, 356 P.2d 399 (1960); *Green County v. Monroe,* 3 Wis. 2d 196, 87 N.W.2d 827 (1958); and *Hall v. Taft,* 47 Cal. 2d 177, 302 P.2d 574 (1956).

WEAVER and McGOVERN, JJ., concur with NEILL, J.