SOUTH HILL SEWER DISTRICT, ET AL, *Respondents*, v.
PIERCE COUNTY, WASHINGTON, ET AL,
*Appellants.*

*Don Herron, Prosecuting Attorney,* and *Keith M. Black, Deputy,* for appellants.

*Skoog & Mullin, Thomas L. Fishburne,* and *George Kelley,* for respondents.

SOULE, J.—Pierce County appeals from a summary judgment declaring that the City of Bonney Lake and the South Hill Sewer District may locate their sewage treatment plant in unincorporated Pierce County without regard to the limitations of the Pierce County zoning regulations and that therefore, the plaintiffs need not obtain an unclassified use permit or a substantial development permit which is normally required under local regulations adopted by virtue of the Shoreline Management Act, RCW 90.58.010 *et seq.*

The principal issue is whether Pierce County can use its zoning regulations to prohibit another governmental entity from placing its sewage treatment facility in the county at a site initially selected by joint action between Pierce County and that governmental entity, the site being in a general use classification area. We hold that zoning regulations cannot be so used.

The matter came before the trial court on stipulated facts. In essence, it was agreed that since early 1970, Pierce County has been concerned with water–quality management in the Puyallup River Basin. As a result, the Board of County Commissioners by appropriate resolution, as set forth in the stipulation, accepted federal assistance in developing a basin plan. Prior to July 1, 1975, plans were completed at a cost of $198,000 and the plan was adopted on July 1, 1975. It was later amended on June 21, 1976, by amending the Pierce County Comprehensive Plan.

Meanwhile, on February 18, 1975, by resolution No. 17799, Pierce County approved and executed an "Interlocal Agreement" between Bonney Lake, South Hill Sewer District and Pierce County. The purpose was to provide for the preparation of plans for a specific subarea of the larger basin plan. By the agreement, Pierce County designated Bonney Lake as the lead agency to administer the project and acquire real property. Pierce County also pledged its full cooperation and good faith in implementing the plan. Pursuant to the agreement, engineers were employed to prepare a facility plan which was submitted in June of 1976 and modified in September of 1976. That plan had several alternative site suggestions for the treatment facility.

On February 15, 1977, by resolution No. 19445, the Board of County Commissioners approved the plan and specifically accepted site No. 2 (the one here at issue), reserving however, the right to recommend alternative site No. 6 in the event Bonney Lake "fails to be successful in implementing alternative II." On the same day the Board executed a further "Interlocal Agreement" continuing the authority of Bonney Lake as the lead agency and again agreeing to cooperate.

Following the execution of this agreement, an engineering firm commenced actual design work which was largely completed by July 26, 1977. On April 12, 1977, the county made an additional commitment of $125,000 toward the design costs which included facilities at alternative site No. 2, and in May of 1977, Bonney Lake applied to Pierce County for an unclassified use permit. In connection with site No. 2, the State Department of Ecology and the United States Environmental Protection Agency gave their approvals.

On June 2, 1977, the Pierce County Planning staff made a favorable recommendation to the Planning Commission and also indicated that the request was in conformity with all applicable plans and regulations. Nevertheless, on June 9, after a public hearing, the verbatim record of which we do not have, the Planning Commission voted to deny the unclassified use permit. Bonney Lake appealed to the

Board of County Commissioners and on June 26, 1977, they upheld the Planning Commission and refused to grant the unclassified use permit. In support of the Board's action, it found that to permit the sewage treatment facility in a general use zone was

> NOT reasonably necessary and requisite in the interest of the public health, safety, morals and the general welfare and that said Unclassified Use Permit will NOT permit the advantageous and economic development of the community and the county without unduly injuring adjacent and surrounding property, . . .

The minutes of the meeting of June 26 reflect that the County Commissioner in whose district site No. 2 is located identified the issue as "Are we going to allow the treatment plant to be built where it is proposed, or are we going to tell them to take another alternate."

By this action, the County Commissioners repudiated their action of February 15, 1977, wherein they agreed to, and approved, site No. 2 and thereby affirmatively prevented Bonney Lake from implementing its plans to build on that location. Bluntly put, they reneged, and although we do not base our decision on this action, it is clear that in so doing, they jeopardized 7 years of planning, study and design, during which, large sums of taxpayers' money had been spent under the supervision of Bonney Lake as the agreed–upon lead agency.[1]

To the extent that it is of importance in this case, there can be no question but that the operation of a sewage disposal facility is a governmental, rather than a proprietary function. *Steilacoom v. Thompson,* 69 Wn.2d 705, 419 P.2d 989 (1966). Appellants concede that this is the general rule and refer to *Scottsdale v. Municipal Court,* 90 Ariz.

---

[1]The respondents have alluded to, but not relied upon, the theory of estoppel. Therefore, we will not address the issue except to note that if we were to remand for further factual determinations as urged by the appellants, the possible application of the theory is evident. *See Harbor Air Serv., Inc. v. Board of Tax Appeals,* 88 Wn.2d 359, 560 P.2d 1145 (1977); *Metropolitan Park Dist. v. State,* 85 Wn.2d 821, 539 P.2d 854 (1975); *Shafer v. State,* 83 Wn.2d 618, 521 P.2d 736 (1974); *Finch v. Matthews,* 74 Wn.2d 161, 443 P.2d 833 (1968).

393, 368 P.2d 637 (1962); *AIA Mobile Home Park, Inc. v. Brevard County,* 246 So. 2d 126 (Fla. Ct. App. 1971); *Kedroff v. Springfield,* 127 Vt. 624, 256 A.2d 457 (1969). *See also Pruett v. Dayton,* 39 Del. Ch. 537, 168 A.2d 543 (1961); *County of Westchester v. Mamaroneck,* 22 App. Div. 2d 143, 255 N.Y.S.2d 290 (1964).

When the activity is governmental, many jurisdictions hold that the acquisition or use of land for that purpose cannot be blocked merely because the area proposed for the placement of the facility is not zoned to permit the proposed governmental use. *Scottsdale v. Municipal Court, supra; Des Plaines v. Metropolitan Sanitary Dist.,* 48 Ill. 2d 11, 268 N.E.2d 428 (1971); *Decatur Park Dist. v. Becker,* 368 Ill. 442, 14 N.E.2d 490 (1938); *People ex rel. Scott v. North Shore Sanitary Dist.,* 132 Ill. App. 2d 854, 270 N.E.2d 133 (1971); *In re Detroit,* 308 Mich. 480, 14 N.W.2d 140 (1944); *State ex rel. Askew v. Kopp,* 330 S.W.2d 882 (Mo. 1960); *State ex rel. St. Louis Union Trust Co. v. Ferriss,* 304 S.W.2d 896 (Mo. 1957); *Green County v. Monroe,* 3 Wis. 2d 196, 87 N.W.2d 827 (1958). *See also O'Connor v. Rockford,* 52 Ill. 2d 360, 288 N.E.2d 432 (1972); *Bloomfield v. New Jersey Highway Auth.,* 18 N.J. 237, 113 A.2d 658 (1955); *County of Westchester v. Mamaroneck, supra.*

The rationale sometimes used to explain this result is that where the entity seeking to acquire the land for a governmental purpose has the power of eminent domain, that power being an attribute of sovereignty, is superior to the power to zone which is derived from the general police power as implemented by statute. As stated in *Scottsdale v. Municipal Court, supra* at 396:

> Zoning finds its authority in the police powers, . . . while eminent domain is the right and power in a sovereign state to appropriate private property to uses for the public good. The right is "a necessary, constant and unextinguishable attribute," of sovereignty.

(Citation omitted.) Likewise, in *County of Westchester v. Mamaroneck, supra,* the court said at page 148:

broad principles of sovereignty require that a state or its agency or subdivision performing a governmental function be free of local control.

In *Des Plaines v. Metropolitan Sanitary Dist., supra,* the court based its decision on statutory grounds, saying, at page 14:

The statute clearly authorized the taking of the property in question in the City of Des Plaines. To find that the condemnation power of the district is subject to the restrictions of local municipal zoning ordinances would be to relegate the authority of the district to that of a private land owner, and would thereby frustrate the purpose of the statute. If the district is exercising power within the statutory grant, such exercise is not subject to zoning restrictions imposed by the host municipality.

This method of resolving the conflict between the power of eminent domain and the police power as exercised through zoning statutes has been criticized as overly simplistic. *Governmental Immunity From Local Zoning Ordinances,* 84 Harv. L. Rev. 869 (1970–71).

In some jurisdictions, rather than according automatic superiority to the power of eminent domain, courts have adopted a balancing of interests test wherein the court assumes the role of final arbiter of the public interest in land use planning problems. *Brown v. Kansas Forestry, Fish & Game Comm'n,* 2 Kan. App. 2d 102, 576 P.2d 230 (1978); *Oronoco v. Rochester,* 293 Minn. 468, 197 N.W.2d 426, 59 A.L.R.3d 1238 (1972); *Fargo v. Harwood Township,* 256 N.W.2d 694 (N.D. 1977); *cf. St. Louis County v. Manchester,* 360 S.W.2d 638 (Mo. 1962).

█ Appellants urge us to reject the approach recognizing the superior power of eminent domain and adopt the balancing of interests test. We decline the invitation because in this case, and on this record, we are persuaded that the eminent domain test is proper in light of the legislative intent as expressed by the applicable statutes.[2]

[2]Even if we were to apply the balancing of interests test, the basic facts in this case are so remarkably similar to *Oronoco v. Rochester,* 293 Minn. 468, 197

The power of eminent domain is addressed in article 1, section 16, and amendment 9 to the Washington State Constitution. This power may be exercised by a municipal corporation when expressly authorized by the state legislature. *Tacoma v. Welcker,* 65 Wn.2d 677, 399 P.2d 330 (1965).

The power of eminent domain is given to the South Hill Sewer District by RCW 56.08.010 and is to be exercised in the manner and by the same procedures as provided for cities of the third class.

The eminent domain power of Bonney Lake is found in RCW 8.12.030 and that power as it relates to plants and facilities for the treatment of sewage is further implemented by RCW 35.67. RCW 35.67.020 provides in part:

> Every city and town may construct, condemn and purchase, acquire, add to, maintain, conduct, and operate systems of sewerage and systems and plants for refuse collection and disposal together with additions, extensions, and betterments thereto, within and without its limits, *with full jurisdiction and authority to manage, regulate, and control them . . .*

(Italics ours.)

The words "with full jurisdiction and authority to manage, regulate and control them," appear to us to be a significant and very broad grant of power. One does not have full jurisdiction and authority to manage, regulate and control, if the geographical location of the facility can be vetoed by another agency. The words indicate to us that the legislature intended no restrictions insofar as the selec-

N.W.2d 426, 59 A.L.R.3d 1238 (1972), that we would find its reasoning most persuasive in reaching a result favorable to Bonney Lake and the South Hill Sewer District. It is apparent that the finding of the Board, expressed in its minutes, is at complete variance with all its prior determinations based upon earlier studies and with the studies and approvals of the state and federal environmental authorities. The minutes of the meeting of June 26, 1977, give a strong indication that the decision was made because of the pressure of residents in the immediate area who were, as might be expected, not pleased to be in close proximity to such a facility, no matter how carefully operated. This is confirmed by Pierce County's trial memorandum of November 8, 1977.

tion of the site for the facility is concerned.[3]

█ Appellants argue that RCW 36.70, the planning enabling act, was intended to regulate sewerage disposal facilities because the chapter refers to public projects. RCW 36.70.010 refers to the correlation of public and private projects in developing and servicing land. RCW 36.70.330 refers to the *general* location of proposed public projects, and RCW 36.70.350(5) provides that plans may include as optional elements, "a public services and facilities element showing *general* plans for sewerage, refuse disposal, drainage and local utilities, and rights of way, easements and facilities for such services". (Italics ours.)

We make these observations.

Insofar as RCW 36.70.350 is concerned, it appears to be directed to operating facilities and to generalized future locations as contrasted with specific facility plans.

While the legislature rightly included proposed public developments within the scope of matters which should be addressed in a comprehensive plan, the clear thrust of the legislation is to provide a tool for planning future growth and that tool was used by all concerned in this litigation from 1970 to 1977.

That the comprehensive plan was intended to be advisory only insofar as public projects are concerned, is strongly suggested by RCW 36.70.540 which provides in part:

Whenever a board has approved by motion and certified all or part of a comprehensive plan, no street, square, park or other public ground or open space shall be acquired by dedication or otherwise, no street shall be disposed of, closed or abandoned, and no public building or structure shall be constructed or authorized to be constructed in the area to which the comprehensive plan

---

[3]We express no opinion as to whether or not, in a proper case, the courts could require adherence to regulations pertaining to building setbacks, curb cuts giving access to county roads, screening of unsightly activities, or other collateral matters. *See Edmonds School Dist. 15 v. Mountlake Terrace*, 77 Wn.2d 609, 465 P.2d 177 (1970). That issue is not before us.

applies until its location, purpose and extent has been submitted to and reported upon by the planning agency. The report by the planning agency shall set forth the manner and the degree to which the proposed project does or does not conform to the objectives of the comprehensive plan. *If final authority is vested by law in some governmental officer or body other than the board,* such officer or governmental body shall report the project to the planning agency and the planning agency shall render its report to such officer or governmental body. In both cases the report of the planning agency shall be *advisory* only.

(Italics ours.)

Under the agreements making Bonney Lake the lead agency, it appears to us that Bonney Lake is the "final authority" as that term is used in RCW 36.70.540. In specifying, as that statute does, that although the plans should be processed by the planning agency, that the report should be advisory only, the legislature is indicating that while planning considerations may not be ignored, they cannot be used as a means of blocking a public project.

In addition, we note that the planning enabling act, RCW 36.70, was enacted in 1963, while RCW 35.67, which grants specific powers to cities and towns to construct and manage sewerage systems, was enacted in 1965.

■ Where two statutes address the same subject matter, the court should read them so that the integrity of both is maintained, if it can reasonably do so. *Beach v. Board of Adjustment,* 73 Wn.2d 343, 438 P.2d 617 (1968). Of course, a subsequent statute will not be held to repeal by implication a prior statute if the two can reasonably be reconciled. *Babcock v. School Dist. 17,* 57 Wn.2d 578, 358 P.2d 547 (1961); *Olympia State Bank & Trust Co. v. Craft,* 56 Wn.2d 546, 354 P.2d 386 (1960).

However, in this case, it is clear that the planning enabling act, RCW 36.70, did not expressly give the county authority to use zoning to control the location of sewerage facilities and to the extent that an argument can be made for implied authority, that argument is weakened by the

provisions of RCW 36.70.540 which makes the planning agency's recommendation advisory only. On the other hand, the later statute, RCW 35.67.020, gives an express grant of full jurisdiction and authority to manage, regulate and control the facility. Therefore, we hold that the eminent domain power is superior and the county may not use its zoning power to prevent Bonney Lake and the South Hill Sewer District from locating its facility at alternative site No. 2.[4] We hold that the appellants may proceed without the unclassified use permit.

Included in Pierce County's single assignment of error is reference to the judgment of the trial court determining that Bonney Lake and the South Hill Sewer District are not legally obligated to obtain a substantial development permit. The judgment states:

plaintiffs, may locate their sewage treatment plant and related structures within the unincorporated area of Pierce County without regard to limitations created by Pierce County's zoning regulations, and, therefore, plaintiffs were not legally obligated to obtain an unclassified use permit under the defendant's zoning code and or a substantial development permit under the local regulations adopted by virtue of the Shoreline Management Act, RCW 90.58.010, et seq., . . .

The appellants' brief and the state of the record leave us in doubt as to whether or not the determination that a substantial development permit is not needed is an independent issue in this case. Appellants' brief contains only passing reference in the statement of the case to the fact that, after the County Commissioners had determined to refuse the unclassified use permit, the county's shoreline technical advisory commission denied the application for a substantial permit. No specific argument is contained in the

---

[4]The possession of a power of eminent domain does not provide a municipality with the unfettered power to locate its project. Such a power is subject to review for bad faith, or arbitrary, capricious or fraudulent action. *State ex rel. Lange v. Superior Court*, 61 Wn.2d 153, 377 P.2d 425 (1963); *Des Plaines v. Metropolitan Sanitary Dist.*, 48 Ill. 2d 11, 268 N.E.2d 428 (1971).

appellants' brief challenging the legal basis for the judgment as it relates to the shoreline development permit. The only reference is associated with the appellants' argument urging us to adopt the balancing of interests test in determining the extent of the county's zoning powers.

■ When no argument is advanced directly relating to the assignment of error and no authority is cited in support of the assignment of error, the contention will generally not be considered by the appellate court. *Hamilton v. State Farm Ins. Co.*, 83 Wn.2d 787, 523 P.2d 193 (1974); *Hansen v. Wightman*, 14 Wn. App. 78, 538 P.2d 1238 (1975).

Furthermore, when the potential basis for appellants' assignment of error is neither stated nor argued, nor is any reference made to the statutory (or local regulations) or decisional law bearing upon the issue, we will consider the assignment of error waived. *Puget Sound Plywood, Inc, v. Mester*, 86 Wn.2d 135, 542 P.2d 756 (1975); *Winslow v. Mell*, 48 Wn.2d 581, 295 P.2d 319 (1956); *Deer Park Pine Indus., Inc. v. Stevens County*, 46 Wn.2d 852, 286 P.2d 98 (1955); *Wray v. Benton County PUD*, 9 Wn. App. 456, 513 P.2d 99 (1973). Under such circumstances we will not attempt to construct an argument on behalf of appellants. *In re Marriage of Croley*, 91 Wn.2d 288, 588 P.2d 738 (1978).

Particularly do we feel justified in considering the potential issue to have been abandoned when the appellants have not incorporated into the record on appeal the local regulations and shoreline technical advisory committee material which had been presented to the trial judge, a consideration of which would be necessary to evaluate an argument addressed to the propriety of the judgment. The validity of the trial court's order in this regard is not before us and has become the law of the case.

We therefore also affirm that portion of the judgment which authorizes the Bonney Lake and the South Hill Sewer District to proceed without a substantial development permit, noting as we do so that the project has been

approved by the State Department of Ecology and the United States Environmental Agency.

The judgment of the trial court is affirmed.

PEARSON, C.J., and REED, J., concur.