[No. 45866. En Banc. August 14, 1980.]

THE STATE OF WASHINGTON, ET AL, *Respondents,* v. THE CITY OF SEATTLE, ET AL, *Appellants.*

*Douglas N. Jewett, City Attorney,* and *Ellen D. Peterson, Assistant,* for appellants.

*Slade Gorton, Attorney General,* and *James B. Wilson, Senior Assistant,* for respondents.

*Paul Silver* and *Barbara Hoffman* on behalf of Washington Trust for Historic Preservation and Allied Arts of Seattle, amici curiae.

UTTER, C.J.—The University of Washington Board of Regents sought declaratory and injunctive relief against the City of Seattle to prevent Seattle's Landmarks Preservation Board from nominating or designating any buildings as landmarks within the University's Metropolitan Tract. On cross motions for summary judgment, the trial judge ruled in favor of the University and on appeal, we granted direct review.

The legal issue dispositive of the case is whether the city ordinance conflicts with a general state law and is thus unconstitutional as applied under Const. art. 11, § 11. We hold that it is and affirm the trial court.

The City of Seattle enacted a Landmarks Preservation Ordinance, No. 106348 (1977), which created a Landmarks Preservation Board (Board). It also established procedures for nominating, designating, and preserving both areas of the city and individual structures as landmarks. The procedure established is that after a site or structure is nominated for preservation as a landmark, the Board reviews the proposal to determine if specified criteria are met. If the Board approves the nomination, it then negotiates with the owner as to controls to be placed on the site or structure to preserve the significant features. The parties also negotiate application of any economic incentives such as tax relief, or grants–in–aid which may be available. If agreement on controls cannot be reached, a hearing examiner makes a recommendation, which is appealable to the city council. Finally, the city council designates a structure or site as a landmark, specifying the controls imposed. Once nominated, and pending designation, written authorization must be obtained from the Board prior to any significant change.

The University's Metropolitan Tract (Tract) is the original 10–acre parcel of land endowed to Washington Territory to establish a university, and now lies in the center of downtown Seattle. This Tract is no longer used directly for educational purposes, but is leased by the University to private parties. Part of the Tract is leased to the Olympic Hotel Company, and the remaining portion to University Properties, Inc. Both lease agreements provide that the University retains final authority as to major alterations.

On April 5, 1978, the Board approved the nomination of portions of buildings on the Tract as landmarks. The Board nominated the exterior of the Skinner Building, and the interior surfaces and fixtures of the lobby and auditorium of the Fifth Avenue Theater, which is located within the

Skinner Building. Under the city ordinance, nomination triggered the requirement that the University obtain Board approval prior to any significant change.

Historical value of the nominated structures is conceded, and counsel for the University stated in oral argument that it has no present demolition plans. However, decisions as to whether to preserve, alter, or destroy Tract buildings are claimed by the University to rest with the Board of Regents, and it urges that the City has no power to regulate the Tract.

■■ Power to enact landmark preservation legislation is derived by the City from the delegation of police power found in Const. art. 11, § 11. *Cf. Ithaca v. County of Tompkins,* 77 Misc. 2d 882, 355 N.Y.S.2d 275 (1974) (city acts under historic preservation enabling act). Article 11, section 11 grants to cities the power to

> make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

Municipal police power is as extensive as that of the legislature, so long as the subject matter is local and the regulation does not conflict with general laws. *E.g., Petstel, Inc. v. King County,* 77 Wn.2d 144, 159, 459 P.2d 937 (1969). The scope of police power is broad, encompassing all those measures which bear a reasonable and substantial relation to promotion of the general welfare of the people. *See, e.g., Markham Advertising Co. v. State,* 73 Wn.2d 405, 439 P.2d 248 (1968). While the University does not contest the City's general power to preserve landmarks, it does contend that the City's power does not extend to structures owned by the State.

The legislature has given the Board of Regents "full control of the university and its property of various kinds." RCW 28B.20.130. The Board of Regents is specifically empowered to lease the Tract, RCW 28B.20.382, and upon the expiration of the leasehold or acquisition by the University, it has the power

> (i) to construct new buildings on, or

    (ii) to *raze, reconstruct, alter, remodel* or add to existing buildings on, or
    (iii) to otherwise improve,
the university tract, . . .

(Italics ours.) RCW 28B.20.392(2)(b). These laws governing the Tract are general laws. They apply to all things within the class—the Tract properties—and the classification of Tract properties as distinct from other properties is appropriate. *See Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 539, 520 P.2d 162 (1974).

    Const. art. 11, § 11 requires that when a state statute and municipal regulation on the same subject cannot be harmonized, the municipal regulation must yield. *E.g., Spokane v. J–R Distribs., Inc.,* 90 Wn.2d 722, 730, 585 P.2d 784 (1978). The city's landmarks ordinance as applied cannot coexist with RCW 28B.20.392(2)(b)(ii). The effect of applying the landmarks ordinance to the Tract would be to forbid alterations of the nominated properties without Board approval and subject designated structures to controls imposed by the city council, while RCW 28B.20.392(2)(b)(ii) expressly permits the Board of Regents to alter and even demolish Tract buildings. *See Bellingham v. Schampera,* 57 Wn.2d 106, 111, 356 P.2d 292, 92 A.L.R.2d 192 (1960). The legislature has clearly shown its intent that the decision–making power as to preservation or destruction of Tract buildings rests with the Board of Regents. *See Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964). *See also South Hill Sewer Dist. v. Pierce County,* 22 Wn. App. 738, 591 P.2d 877 (1979). *Edmonds School Dist. 15 v. Mountlake Terrace,* 77 Wn.2d 609, 465 P.2d 177 (1970).

    The University contends that a blanket rule of immunity applies to exempt state property from municipal regulations unless the legislature specifically provides otherwise. *See Kentucky Inst. for Blind v. Louisville,* 123 Ky. 767, 97 S.W. 402 (1906); 2 R. Anderson, *American Law of Zoning* § 12.06 (2d ed. 1968). Since the University is a state agency and no statute expressly provides that the Tract is subject

to local laws, the University argues that the Tract is immune from the city's landmarks ordinance.

We decline to apply a rule of immunity, and find it unnecessary to express an opinion on the validity of such a rule. *See Brown v. Kansas Forestry, Fish & Game Comm'n*, 2 Kan. App. 2d 102, 576 P.2d 230 (1978); *Rutgers Univ. v. Piluso*, 60 N.J. 142, 286 A.2d 697 (1972); 8 E. McQuillin, *Municipal Corporations* § 25.15 (3d rev. ed. 1976); Note, *Governmental Immunity from Local Zoning Ordinances*, 84 Harv. L. Rev. 869 (1971).

The City of Seattle has no power to nominate or designate any buildings as landmarks within the University's Metropolitan Tract, and we affirm the trial court.

STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, HICKS, and WILLIAMS, JJ., and COCHRAN, J. Pro Tem., concur.

DOLLIVER, J. (dissenting)—The majority frames the issue as "whether the city ordinance conflicts with a general state law and is thus unconstitutional as applied under Const. art. 11, § 11." It finds it does. Therefore, the City loses. I do not, however, think it is that easy. As we have observed on numerous occasions, a statute will not be construed as taking away the power of a municipality to legislate unless this intent is clearly, expressly and unambiguously stated. *State ex rel. Schillberg v. Everett District Justice Court*, 92 Wn.2d 106, 594 P.2d 448 (1979). Any seeming conflict must be harmonized, if possible. *Ayers v. Tacoma*, 6 Wn.2d 545, 554, 108 P.2d 348 (1940).

It is conceded the City has the power to preserve landmarks. The question is whether RCW 28B.20.392(2)(b)(ii), enacted in 1969, takes this power away from the City as it relates to buildings in the Metropolitan Tract, and if there appears to be a conflict between the City and State whether it can be harmonized. Clearly, the statute does not expressly deprive the City of its power, nor can the power granted to the Board of Regents be said to be unambiguous. While the power to deal with the Metropolitan Tract is

given to the Board of Regents, this does not necessarily mean that the Board of Regents is free from the requirements of local government any more than other proprietors in downtown Seattle. The exercise of the police power by Seattle does not conflict with the power of the Board of Regents. *See Seattle v. Long*, 61 Wn.2d 737, 380 P.2d 472 (1963). Furthermore, even if it is contended, as does the majority, that RCW 28B.20.392(2)(b)(ii) standing alone gives full power to the Board of Regents "to raze, reconstruct, alter, remodel or add to existing buildings", and thus deprives the City of any power, the statute cannot be read in isolation.

Since enacting RCW 28B.20.392(2)(b)(ii), the legislature in specific and unambiguous terms has passed legislation relative to historic preservation. In 1977 the legislature declared:

> The legislature hereby finds that the promotion, enhancement, perpetuation, and use of structures, sites, districts, buildings, and objects of historic, archaeological, architectural, and cultural significance is desirable in the interest of the public pride and general welfare of the people of the state; and the legislature further finds that the economic, cultural, and aesthetic standing of the state can be maintained and enhanced by protecting the heritage of the state and by preventing the destruction or defacement of these assets; therefore, it is hereby declared by the legislature to be the public policy and in the public interest of the state to designate, preserve, protect, enhance, and perpetuate those structures, sites, districts, buildings, and objects which reflect outstanding elements of the state's historic, archaeological, architectural, or cultural heritage, for the inspiration and enrichment of the citizens of the state.

RCW 43.51A.010. In 1971 the State Environmental Policy Act of 1971 (SEPA) became law. It has as one of its goals the "Preserv[ation of] important historic, cultural, and natural aspects of our national heritage". RCW 43.21C-.020(2)(d). SEPA further directs that the "laws of the state of Washington shall be interpreted and administered in accordance with the policies set forth in this chapter"

(RCW 43.21C.030(1)), and for all public bodies, including municipal corporations, to review their regulations and ordinances to ensure full compliance with the purposes and provisions of SEPA. RCW 43.21C.040. The legislature further provided in RCW 43.21C.060 that "The policies and goals set forth in this chapter *are supplementary* to those set forth in *existing authorizations of all branches of government of this state, including state agencies, municipal and public corporations, and counties*". (Italics mine.) *See Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 276, 525 P.2d 774 (1974).

Read together with the specific policy declaration of the legislature in RCW 43.51A.010 and RCW 43.21C.020, .030, .040 and .060, it is apparent that the claimed legislative grant to the Board of Regents of absolute power is illusory. It is not unreasonable to conclude that the legislature not only did not bar the exercise of the police power of the City of Seattle as it related to the buildings in the Metropolitan Tract, but actually gave authorization and encouragement for the kind of action taken by the City.

By this analysis, the court can harmonize the statutes and give full meaning both to the 1969 statute and to subsequent environmental legislation. *See Leschi Improvement Council v. State Highway Comm'n, supra; Juanita Bay Valley Community Ass'n v. Kirkland,* 9 Wn. App. 59, 510 P.2d 1140 (1973).

In addition to the numerous opinions of this court, scholarly opinion also concurs that, unless there is an express limitation on the power of municipal corporations, it is better policy for this court not to preclude action by a city simply because there is a prior statute relating to the subject matter.

> Such an approach in favor of the municipality does not unfairly treat the private parties regulated or the interests of the state. So far as private persons are concerned, it is to be remembered that all other attacks upon municipal ordinances, whether of a constitutional or statutory nature, are still available. The only thing being

said is that a conflict should not be found unless it truly exists.

The purpose of the constitutional provision precluding local regulations in conflict with statutes is to assure the supremacy of the legislature. That supremacy is maintained even though the approach is in favor of the municipality on the conflict issue. The legislature can expressly make its wishes known if it does not want the municipality to act in a particular manner or if the court misconstrues the legislative intent. A construction against the municipality which is erroneous is less likely to be rectified. It would have the effect of interfering with the functioning of local government without any equivalent benefit to private parties or the state.

Trautman, *Legislative Control of Municipal Corporations in Washington*, 38 Wash. L. Rev. 743, 781 (1963).

The City has chosen to exercise its police powers so as to provide for the preservation of historic buildings. There is no express legislation which exempts the Board of Regents from Seattle's landmarks ordinance; rather, the legislature has expressly encouraged such municipal action.

I dissent.