# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ANTI-SMOKING ALLIANCE dba PINK LUNG BRIGADE, a Washington nonprofit corporation,<br><br>           Respondent,<br><br>    v.<br><br>TACOMA-PIERCE COUNTY DEPART-MENT OF HEALTH and HEALTH BOARD, a division of Pierce County and the City of Tacoma; and VICTORIA WOODARDS, RICK TALBERT, PAT MCCARTHY, PAT JOHNSON, CONNIE LADENBURG, MARTY CAMPBELL, STEPHEN COOK, M.D., DEREK YOUNG, KERI ROONEY, LARGO WALES, JIM MCCUNE, LAUREN WALKER, and MARK GRUBB, M.D., Tacoma-Pierce County Health Board members in their official and individual capacities,<br><br>           Appellants. | No. 52458-9-II<br><br><br><br>PUBLISHED OPINION |

GLASGOW, J.—The Tacoma-Pierce County Board of Health adopted regulations regarding "Restrictions on the Use of Vapor Products."[1] These regulations included restrictions on tasting and sampling in retail stores, as well as a ventilation requirement if in-store tasting is offered. The Anti-Smoking Alliance dba Pink Lung Brigade, a nonprofit corporation that includes vaping retailers, sought an injunction blocking enforcement of the new regulations on the grounds that

---

[1] Tacoma-Pierce County Bd. of Health, Environmental Health Code (EHC), ch. 9 (July 6, 2016) [https://perma.cc/FCD3-H9VJ]; Clerk's Papers at 542.

they are preempted by state law prohibiting local regulation of the promotion and sale of vapor products. The trial court granted the injunction, concluding that state law prohibited local governments from regulating vapor shops in this way.

The Tacoma-Pierce County Board of Health and Tacoma-Pierce County Health Department (collectively Board) appeal, arguing that the regulations are a valid exercise of the Board's authority under a statute expressly allowing it to regulate the use of vapor products in indoor public places. The Board also argues that the injunction was improperly granted because the Alliance did not identify a clear legal or equitable right at issue, a prerequisite to obtaining an injunction. Finally, the Board argues that some of the trial court's findings of fact related to harm Alliance members would suffer under the regulations were not supported by substantial evidence.

The legislature has expressly prohibited local regulation of vapor product promotions and has expressly required that tasting and sampling be permitted. The more general express authority granted to local governments to regulate indoor vaping does not overcome these specific prohibitions. Because tasting and sampling are forms of vapor product promotions, the Board is preempted from regulating those activities within vapor shops. The Alliance established a clear legal and equitable right to be free from such regulation, as well as actual and substantial injury should the regulations go into effect. We affirm the trial court's grant of the injunction.

FACTS

In January 2016, the Board adopted EHC chapter 9 regulating the sale, use, and availability of vapor products. The Alliance objected to a number of the new requirements and filed suit to enjoin their enforcement. In June 2016, the legislature enacted chapter 70.345 RCW, which governs the vaping industry in Washington. Relevant to this case, the statute expressly prohibits

political subdivisions from "adopting or enforcing requirements for the licensure and regulation of vapor product promotions and sales at retail." RCW 70.345.210(1). The statute also generally prohibits political subdivisions from regulating the use of vapor products in outdoor public places. RCW 70.345.210(2). However, the statute permits political subdivisions to regulate the use of vapor products in indoor public places so long as they permit the use of vapor products for tasting and sampling in retail outlets. RCW 70.345.150(1)(b), .210(3).

After a public comment period, the Board revised EHC chapter 9, "Restrictions on the Use of Vapor Products." Clerk's Papers (CP) at 542. The amended regulations' purpose "is to provide for and promote the health, safety, and welfare of the general public." EHC 9(2)(B); CP at 543. The Board made several findings related to the public health risks posed by vapor products, particularly as they relate to youth and secondhand exposure to vapor emissions, and the need for a comprehensive regulatory framework addressing those risks. EHC 9(3).

EHC 9(5)(A) provides that "[n]o person may use vapor products in an indoor public place or in any place of employment," except as permitted in EHC 9(6).[2] CP at 547. EHC 9(5)(B) prohibits the "use of vapor products in any outdoor public place where children congregate." CP at 547. Section 6 provides that no retail outlet may offer tastings of vapor products to the general public unless certain conditions are met. Among other things, section 6 requires that vapor shops have a specific type of ventilation system, that e-liquid offered for tasting must be nicotine-free, that tastings may only occur at the sales counter, and that no more than three customers may taste at one time. EHC 9(6)(B), (D), (F). Any violation of section 6 is a misdemeanor. EHC 9(6)(I).

---

[2] The Alliance did not challenge this general ban on indoor vaping in public places or places of employment, and it is not at issue in this appeal except insofar as it relates to vapor shops.

Section 9 authorizes local health officers to enforce the regulations through a right of entry and by working with the Washington State Liquor and Cannabis Board to conduct inspections. EHC 9(9)(A)-(B). EHC 9(9)(C) also outlines a schedule of escalating administrative civil penalties of up to $2,000 for violations.

In response to the amended regulations, the Alliance filed an amended complaint seeking an injunction enjoining the Board from enforcing the portions of the regulations that impacted vapor shops, arguing that those provisions were preempted by state law. The Board brought a motion arguing there were no remaining genuine issues of material fact, but the trial court ultimately set a hearing to fully resolve the Alliance's request for permanent injunction with an opportunity for any necessary testimony.[3]

The Alliance explained that it was asking for a permanent injunction preventing the Board "from enforcing its rules and regulations impacting the sales and promotions of vapor product[s] in local retail vape shops." CP at 1533. The Alliance submitted numerous declarations from its members and vapor shop owners regarding the costs and practical barriers to complying with the regulations and the importance to their business model of promoting their products by providing tastings and samples. The Board submitted a competing declaration contending the costs of installing the required ventilation system were far less than the Alliance members claimed and that it was comparable to the system required for a restaurant kitchen. The Board also submitted an excerpted copy of its administrative record supporting the regulations.

---

[3] The Board had previously moved for summary judgment, but the trial court denied the motion with respect to the Alliance's claims, and we denied discretionary review. After additional discovery, the Board again asserted there were no remaining genuine issues of fact.

After the hearing, the trial court entered findings of fact and conclusions of law. The trial court clarified that the Alliance's challenge was limited to the portions of the regulations that: (1) required installation of a specific ventilation system, (2) limited the number of customers who could sample at one time, (3) limited the location of sampling to the sales counter, (4) prohibited samples containing nicotine, and (5) imposed penalties for violation of these restrictions.

Relevant here, the trial court found that the ventilation system required by section 6 was costly and that it was not possible for some vapor shops to install it. The trial court also found that section 6's tasting and sampling restrictions, specifically the prohibition on e-liquid containing nicotine, would harm vapor shops because at least 90 percent of sampling and sales of e-liquid contain nicotine and nicotine-free vapor cannot replicate the taste.

The trial court also made several legal conclusions regarding the interpretation and application of the relevant statutes. The trial court concluded that state law preempted section 5(A), which prohibited vaping in public places and places of employment, to the extent it related to vapor shops; section 6, regulating tasting, in its entirety; and section 9, governing enforcement, as it related to the enforcement of section 6. The trial court relied on RCW 70.345.210(1), which explicitly preempts local health departments from adopting or enforcing requirements for the regulation of vapor product promotions and sales at retail.

The trial court granted the Alliance a permanent injunction enjoining the Board from enforcing sections 5(A), 6, and 9 in any way that would impact the sales or promotions of vapor products or the licensure of vapor shops in Pierce County. The trial court ruled that state law conferred upon the Alliance and its members "clear legal and/or equitable rights" as vapor shop owners, that they established a reasonable fear of imminent violation of those rights, and that they

would suffer immediate, substantial, and irreparable harm without an injunction. CP at 1725. The trial court also denied the Alliance's request for attorney fees and costs, finding that the Board's actions were neither in bad faith nor frivolous and that there was no recognized ground in equity to authorize such an award.

The Board appeals, arguing that the trial court erred in its legal conclusion that the regulations are preempted by state law, that the trial court erred in granting an injunction, and that the trial court's findings of fact related to harm are not supported by substantial evidence.

ANALYSIS

I. PREEMPTION

The Board argues that the trial court erred in concluding that section 5(A) as it pertains to vapor shops, section 6, and section 9 as it pertains to section 6, are preempted by state law. We disagree.

A.     Preemption Analysis

Article XI, section 11 of the Washington Constitution states: "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." "'The scope of [a county's] police power is broad, encompassing all those measures which bear a reasonable and substantial relation to promotion of the general welfare of the people.'" *Emerald Enters., LLC v. Clark County*, 2 Wn. App. 2d 794, 803, 413 P.3d 92 (2018) (alteration in original) (quoting *State v. City of Seattle*, 94 Wn.2d 162, 165, 615 P.2d 461 (1980)).

We review constitutional preemption challenges de novo. *Id*. But we presume that an ordinance is constitutional, and a party challenging an ordinance bears the heavy burden of establishing that it is unconstitutional beyond a reasonable doubt. *Id.* at 803-04.

"[A] state statute preempts an ordinance on the same subject if the statute occupies the field, leaving no room for concurrent jurisdiction, or if a conflict exists such that the statute and the ordinance may not be harmonized." *Lawson v. City of Pasco*, 168 Wn.2d 675, 679, 230 P.3d 1038 (2010). "A statute preempts the field and invalidates a local ordinance if there is express legislative intent to preempt the field or if such intent is necessarily implied." *Id*. "In the absence of express intent, we may infer field preemption from the purpose of the statute and the facts and circumstances under which it was intended to operate." *Id*.[4] When interpreting a statute, our goal is to ascertain and fulfill legislative intent, giving effect to all of the language used by the legislature. *Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health*, 151 Wn.2d 428, 432, 90 P.3d 37 (2004); *Hood Canal Sand & Gravel, LLC v. Goldmark*, 195 Wn. App. 284, 298, 381 P.3d 95 (2016).

B.      The Challenged Regulations Are Expressly Field Preempted

        1.      The legislature expressly intended to preempt the field of vapor product promotions and sales at retail

RCW 70.05.060(3) broadly authorizes local health boards to enact local regulations "as are necessary in order to preserve, promote, and improve the public health and provide for the enforcement thereof." However, RCW 70.345.210(1), which specifically governs local regulation of vapor products, provides: "This chapter preempts political subdivisions from adopting or

---

[4] Although the Alliance has argued both field preemption and conflict preemption, we address only field preemption. We need not reach conflict preemption.

enforcing requirements for the licensure and regulation of vapor product promotions and sales at retail."

RCW 70.345.210(2) prohibits political subdivisions from "regulat[ing] the use of vapor products in outdoor public places, unless the public place is an area where children congregate, such as schools, playgrounds, and parks." RCW 70.345.210(3) allows political subdivisions to "regulate the use of vapor products in indoor public places," "subject to RCW 70.345.150." RCW 70.345.150(1)(b) specifically permits the use of vapor products "for tasting and sampling in indoor areas of retail outlets."

The legislature did not intend to occupy the entire field of regulating vaping products and businesses because it expressly granted some measure of concurrent jurisdiction by permitting local governments to regulate the use of vapor products in indoor public places under RCW 70.345.210(3). *See Brown v. City of Yakima*, 116 Wn.2d 556, 560, 807 P.2d 353 (1991). However, nothing prevents the legislature from expressly occupying a narrower field by more specifically defining the contours of its intended preemption. Here, the legislature has expressly prohibited local governments from "adopting or enforcing requirements for the licensure and regulation of vapor product promotions and sales at retail." RCW 70.345.210(1).

    2.    <u>The challenged regulations are regulations on the promotion and sale of vapor products at retail</u>

The Board argues the regulations are not preempted because the legislature expressly granted local governments the authority to regulate the use of vapor products in indoor places under RCW 70.345.210(3). Because the regulations emphasize that one purpose is to protect vapor shop employees from harmful exposure to vapor, the Board reasons that limitations on vapor product uses within retail outlets fall within its expressly delegated authority under RCW

70.345.210(3). The Board emphasizes that the regulations do not ban tasting and sampling but instead merely impose certain limitations while permitting the practice as an exception to the broader ban on vaping in indoor public places. We disagree.

Although RCW 70.345.210(3) authorizes the Board to regulate the "use" of vapor products indoors generally, the Board's authority in this matter is limited by the specific preemption language in RCW 70.345.210(1). The Board may not regulate the use of vapor products in indoor public places if such regulation establishes requirements for the promotion or sale of vapor products at retail. Even though EHC 9(6) does not ban tasting and sampling, it conditions offering any tastings on complying with all of the requirements in section 6. This general prerequisite, along with the specific requirements related to sampling and tasting, amount to *regulations on* vapor product promotions and sales. *See* RCW 70.345.210(1).

The record supports the conclusion that tasting and sampling are an integral part of the promotion and retail sale of vapor products for the Alliance members. Several members stated that their businesses depend on offering samples in order to promote and sell their vapor products, particularly to customers looking to transition from smoking cigarettes to vaping. The trial court specifically found that the prohibition on e-liquid containing nicotine would harm vapor shops because at least 90 percent of sampling and sales of e-liquid contain nicotine. This finding recognizes that sampling and tasting are intertwined with the promotion and sale of vapor products.

Thus, EHC 9(6) imposes regulatory requirements on the promotion and sale of vapor products at retail by establishing that no retail outlet may offer tastings of vapor products unless certain requirements are met. Limiting the number of customers who can taste or sample at one time, limiting the location of tasting or sampling, and prohibiting samples containing nicotine all

regulate the promotion of vapor products contrary to RCW 70.345.210(1). EHC 9(6)(B), (D), (F). Indeed the trial court specifically identified the prohibition on nicotine in sample e-liquids as negatively impacting vapor product sales.

Although EHC 9(6)(B)'s requirement for a specific ventilation system is less clearly related to tasting and sampling, it is still a prerequisite to offering tastings and therefore also amounts to a regulation of vapor product promotions and sales. Section 6 expressly provides that *all* of its requirements, including the ventilation requirement, are necessary preconditions to tasting, so the entirety of section 6 represents a regulation on the promotion and sale of vapor products at retail.

The requirements of section 5(A) and section 9 also regulate the promotion and sale of vapor products at retail to the extent that they relate to vapor shops and section 6. EHC 9(5)(A) provides that "[n]o person may use vapor products in an indoor public place or in any place of employment," except as otherwise allowed under section 6. CP at 547. Section 9 grants local health officers the authority to enforce EHC chapter 9, including section 6.

In sum, the provisions contained in section 5(A) that relate to vapor shops, section 6 in its entirety, and section 9 as it relates to the enforcement of section 6, amount to regulations on the promotion and sale of vapor products at retail by requiring vapor shops to satisfy preconditions in order to offer tasting at retail. Although the Alliance bears a heavy burden to show the regulations are unconstitutional beyond a reasonable doubt, that burden is met here because of the inescapably clear preemption language of RCW 70.345.210(1).

This application of RCW 70.345.210(1) does not ignore subsection (3) of that statute, which grants local governments the authority to regulate indoor use of vaping products. Rather we recognize that subsection (1) applies specifically to promotions and sales. *Id.* Where there is an

apparent conflict between two statutory provisions, the more specific provision is preferred. *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 585-86, 192 P.3d 306 (2008). RCW 70.345.210(3)'s general grant of authority to regulate indoor use does not swallow up the specific limitation contained in subsection (1). Moreover, RCW 70.345.210(3)'s grant of authority is expressly "subject to" RCW 70.345.150(b), which "permits tasting and sampling in indoor areas of retail outlets." Reading these provisions together, we conclude the legislature did not intend to allow local restrictions on tasting and sampling in retail stores, given the safeguards specifically preserving tasting, sampling, and promotions that the legislature built into the statutory scheme.

Because RCW 70.345.210(1) expressly prohibits local governments from adopting or enforcing such regulations, we uphold the trial court's ruling that section 5(A) as it pertains to vapor shops, section 6 in its entirety, and section 9 as it relates to the enforcement of section 6, are all expressly field preempted by state law.

And because we hold that section 6 unlawfully imposes regulations on the promotion and sale of vapor products at retail, we need not address the Alliance's remaining preemption arguments. There is no dispute that the rest of chapter 9 remains valid.

## II. INJUNCTION

The Board argues that the trial court erred in granting an injunction because the Alliance failed to meet the requirements of *Tyler Pipe Industries, Inc. v. Department of Revenue*, 96 Wn.2d 785, 638 P.2d 1213 (1982). We disagree.

As the party seeking a permanent injunction, the Alliance had to show that they had a clear legal or equitable right, they had a well-grounded fear of immediate invasion of that right, and the challenged regulations were either resulting in or would result in actual and substantial injury. *Id.*

at 792. The Board purports to challenge only the "clear legal or equitable right" element, and does not appear to dispute that the Alliance had a well-grounded fear of immediate invasion of its rights or that it would suffer actual and substantial injury. Br. of Appellant at 34; Reply Br. of Appellant at 13.

Where a party challenges a trial court's factual findings on appeal, we review those findings for substantial evidence. *Blackburn v. State*, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016). Substantial evidence is evidence sufficient to persuade a fair-minded person that the premise is true. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341-42, 308 P.3d 791 (2013). The party challenging the trial court's factual findings bears the burden of proving they are not supported by substantial evidence. *Blackburn*, 186 Wn.2d at 256. We do not reweigh the evidence or substitute our view of the evidence for that of the trial court. *Bale v. Allison*, 173 Wn. App. 435, 458, 294 P.3d 789 (2013). We review conclusions of law de novo. *Scott's Excavating Vancouver*, 176 Wn. App. at 342.

The Board argues that an injunction was inappropriate because the Alliance did not identify a clear legal or equitable right implicated by the Board's regulations. The Board cites primarily to *American Legion*. There, the petitioner argued that the Washington smoking in public places act, chapter 70.160 RCW, violated the Washington Constitution's protections of privacy rights under article I, section 7. *Am. Legion*, 164 Wn.2d at 596. Our Supreme Court rejected this argument, reasoning that because smoking is not a fundamental right, there is no privacy interest in smoking in a private facility, and therefore the statute was subject only to rational basis review. *Id.* at 600-01. The court also held that the petitioner lacked representational standing to assert a violation of

its members' liberty interests because smoking was not germane to any of the organization's purposes. *Id.* at 596.

This case is distinguishable. Unlike in *American Legion*, which did not involve a request for injunction, the Board here has not challenged the Alliance's standing to challenge these regulations and the Alliance has not asserted that vaping is a fundamental right. Nor was it necessary for the Alliance to assert or demonstrate that vaping is a fundamental right to obtain an injunction; they needed only to demonstrate a clear legal or equitable right. *Tyler Pipe*, 96 Wn.2d at 792.

Here, the relevant statutes enable vapor shop owners to obtain licenses to sell vapor products, describe what they must do to maintain those licenses, and include specific requirements for vapor shop owners to comply with in order to offer tasting to the public. RCW 70.345.020, .030, .100. In addition, the statutes establish that vapor shop owners will not be subject to local government regulation "of vapor product promotions and sales at retail." RCW 70.345.210(1). And the use of vapor products is expressly permitted for tasting and sampling in retail outlets. RCW 70.345.150. These statutes establish a sufficient legal right to obtain an injunction to block enforcement of contrary local regulations.

The Board expressly limited its challenge to the injunction to the legal and equitable right prong, and did not argue that the Alliance failed to show substantial injury. However, the Board does also argue that the trial court's findings relevant to the injunction were unsupported by the record.[5] The trial court found that some of the regulations' requirements, such as section 6's

---

[5] At the outset, the Alliance argues that the Board should be precluded from raising this argument on appeal because it conceded to the absence of a genuine issue of fact below in its motion

ventilation system requirement and restrictions on tasting and sampling, would harm vapor shops by raising operating costs and negatively impacting sales.

To the extent the Board's challenge of the trial court's findings supporting the injunction relate to the actual and substantial injury requirement under *Tyler Pipe*, we conclude that the trial court's findings were sufficient on this front. There is substantial evidence in the record, specifically in the declarations of Alliance members, establishing that the regulations were likely to negatively impact sales and operating costs.[6] This is enough under *Tyler Pipe*.[7]

### III. ATTORNEY FEES

The Alliance asks for attorney fees under RCW 4.84.185 on the grounds that the Board's position is frivolous. Even assuming RCW 4.84.185 authorizes an award of attorney fees on appeal, it was not frivolous for the Board to defend its own regulations in this case. "'An appeal . . . is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is

---

requesting the CR 65 hearing. But because the trial court entered findings of fact after this motion, the Board is entitled to challenge the trial court's factual findings on appeal.

[6] The Board also argues that portions of these declarations were inadmissible because they contained hearsay, lacked foundation, and included unsigned declarations. But the Board does not specify which statements it thinks are hearsay. Furthermore, the Alliance's declarations do not contain statements from other declarants, but rather describe some vapor shop owners' emotional reactions when they learned of some of the EHC requirements. Here, there was adequate foundation for the declarations because the declarants asserted their declarations were based on their own research of the ventilation systems, their conversations with their landlords, and their own personal knowledge of the details of their businesses. Finally, the trial court specifically stated during the CR 65 hearing that it would not consider unsigned declarations.

[7] The Board also seems to challenge the sufficiency of the evidence in the record to support the trial court's other findings, perhaps to combat the Alliance's argument below that the regulations would result in a de facto ban by putting all vapor shops out of business. But because such findings were not necessary to establish actual and substantial injury under *Tyler Pipe*, we need not address these arguments.

so totally devoid of merit that there was no reasonable possibility of success.'" *Robinson v. Am. Legion Dep't of Wash., Inc.*, 11 Wn. App. 2d 274, 298, 452 P.3d 1254 (2019) (internal quotation marks omitted) (alteration in original) (quoting *In re Recall of Feetham*, 149 Wn.2d 860, 872, 72 P.3d 741 (2003)). The Board's arguments presented debatable issues that were not clearly devoid of merit.

The Alliance also asks for attorney fees as a matter of equity, citing the *Restatement (Third) of Restitution and Unjust Enrichment* § 39 (2011). Attorney fees in Washington "'may be recovered only when authorized by statute, a recognized ground of equity, or agreement of the parties.'" *Niccum v. Enquist*, 175 Wn.2d 441, 446, 286 P.3d 966 (2012) (internal quotation marks omitted) (quoting *Wiley v. Rehak*, 143 Wn.2d 339, 348, 20 P.3d 404 (2001)). Section 39 of the *Restatement* does not constitute a recognized ground of equity for granting attorney fees in this context. We accordingly deny the Alliance's request for fees.

CONCLUSION

We affirm. We deny the Alliance's request for attorney fees on appeal.

Glasgow, J.

We concur:

Maxa, J.

Sutton, A.C.J.